K. A. MERRILL v. J. J. TEW.

(Filed 15 March, 1922.)

1. **Contracts—Vendor and Purchaser—Breach—Evidence—Questions for Jury—Trials.**

   In the vendor's action to recover the difference between the contract price of a carload shipment of potatoes and that obtained after he had taken possession and sold them to others upon the breach by the purchaser in refusing to accept the shipment, where the evidence is conflicting, a charge of the court making the defendant's liability to depend upon whether he had refused the shipment without just or legal cause is not erroneous.

**2. Same—Inspection—Resale by Vendor—Damages.**

In an action by the vendor of a carload of potatoes for its purchase price arising from the wrongful refusal of the defendant to receive it upon alleged breach of contract, the exception of defendant that the potatoes were to be inspected before the contract should become binding cannot be maintained on appeal, when, under the charge of the court and the evidence, the jury have found against his contention.

**3. Evidence—Character—General Reputation—Vendor and Purchaser.**

Where the purchaser has been sued for breach of his contract in wrongfully refusing to accept a carload of potatoes from the delivering carrier, and offers evidence tending to show that the potatoes were inferior in quality to those he had purchased, his character or reputation as a dealer in potatoes is properly excluded, and when he has testified in his own behalf, only his character by general reputation may be shown.

**4. Contracts—Breach—Vendor and Purchaser—Damages—Resale.**

Where the defendant has breached his contract in not receiving a carload of potatoes from the delivering carrier, and the purchaser has taken possession for the purpose of selling them, he is only required to take due precaution to prevent damage to the purchaser in disposing of the shipment to others, or not to increase them beyond those that would naturally and reasonably result from the purchaser's breach, and which were within the contemplation of the parties in making the contract.

**5. Same—Place of Resale.**

Where the purchaser has breached his contract in refusing to accept from the seller a shipment of potatoes, and the seller has sold them to others, in the exercise of reasonable care, skill, and prudence, the purchaser's contention that they should have been sold on his local market, and not sent to New York for the purpose, is untenable when the contract is silent on the subject, and it appears that it was not intended to be sold in the local market, but to be shipped beyond that point.

APPEAL by defendant from *Lyon, J.,* at the October Term, 1921, of CARTERET.

The plaintiff alleges that he sold to the defendant, and that the defendant purchased from him, a carload of potatoes about the first of June, 1919. That the car contained 210 barrels at $7.10 a barrel. That the potatoes were primes or No. 1's, that he raised eighty barrels himself, and bought from Dickinson one hundred and ten barrels, and from Springle twenty barrels, paying them $7 per barrel, to enable him to carry out his contract with the defendant. He alleges that he carried out his contract with the defendant. That these potatoes were inspected by the local inspector and placed upon the car as directed by the defendant.

The defendant, as plaintiff alleges, refused to accept the potatoes according to the contract, and after an attempt by the plaintiff to sell the potatoes on the local market, which he failed to do, he consigned the shipment, through Mr. Gibbs, to Phillips & Sons, commission merchants,

in New York, and received for them the sum of $693.58. This action is brought to recover the difference between the contract price for the potatoes and the actual amount the plaintiff received for the 210 barrels, when he sold them on the market.

The jury returned a verdict in favor of plaintiff, and in response to the issues submitted to them as follows:

"1. Did the plaintiff and defendant contract, as alleged in the complaint? Answer: 'Yes.'

"2. Did defendant break said contract? Answer: 'Yes.'

"3. What damage, if any, is plaintiff entitled to recover? Answer: '$776.42, we mean the difference between what the potatoes sold for and $7 per barrel.' "

Judgment was entered accordingly, and defendant appealed.

*C. R. Wheatly for plaintiff.*
*H. L. Stevens and M. Leslie Davis for defendant.*

WALKER, J. The foregoing statement sets forth the main features of the controversy.

There was evidence that the defendant did not refuse to take the potatoes until just after he had received and read a telegram from New York indicating that the market had declined or was "going off." The plaintiff testified that the defendant had told him to load the potatoes on the car, and he would come to the railroad station and pay for them, but refused them after he had read the telegram. The defendant, on the contrary, testified that he had examined the lot of potatoes as well as he could under the circumstances and found them "off grade," and not such as were sold to him. The carload consisted of some potatoes which plaintiff had grown himself and two or more lots he had purchased from others at $7 per barrel to complete the shipment of 210 barrels, and plaintiff further testified that they were "No. 1 primes," that is, of the kind and quality he agreed to sell to the defendant; that he had complied with the contract in all respects, and that the defendant rejected the potatoes without any just or lawful excuse, but simply because he had learned by the telegram that the price was falling in the potato market at New York.

Upon this, and other relevant evidence, the Court instructed the jury very broadly for the defendant. The court told the jury that "if they found from the evidence that the two hundred and ten barrels of potatoes were delivered according to the contract made between plaintiff and defendant (if you find they made such a contract), and you further find that the defendant refused to pay for the potatoes, it will be your duty to answer the first issue 'Yes.' But if the potatoes were not according

MERRILL v. TEW.

to contract, why, then, the defendant was not bound to receive them—
if there was not 90 per cent of them No. 1 potatoes, as contracted for,
there would be no breach of contract by defendant, but if you find that
the potatoes, and all of them, the two hundred and ten barrels were
90 per cent No. 1 prime potatoes, as they were required to be, and that
the defendant refused them for no other reason than that the market
had declined, then you would answer the second issue 'Yes.'" This
charge placed the real issue between the parties squarely upon its merits,
as it was only a question as to which party had testified truthfully about
the matter, and the charge responded fully to the defendant's requests for
instructions, and, at least, substantially so.

The plaintiff further testified that there were two barrels in the car
which were put in there by mistake and were afterwards taken out, and
that defendant was not charged for them, and that there were delivered
to the defendant 210 barrels of good potatoes, such as were described
in the contract, and that there was no reason, or excuse, for him to refuse
to take them.

It further appears in evidence that there was no stipulation that the
potatoes should be first inspected before the contract was complete, but
the jury found otherwise, as the court charged them that if inspection
was required by the defendant before the contract should become binding,
the jury would answer the first issue "No," and they answered it "Yes."

The testimony concerning Mr. Tew's representation "as to his dealings
in potatoes" was properly excluded. His character, or reputation, was
not involved in the issue, and the question was therefore incompetent.
*McRae v. Lilly*, 23 N. C., 118, at 120; *Heileg v. Dumas*, 65 N. C., 214,
at 215; *Marcom v. Adams*, 122 N. C., 222; *Fowler v. Ins. Co.*, 6 Cowan
(N. Y.), 73. It was competent to prove Mr. Tew's character by general
reputation. Speaking of evidence such as was offered in this case, in
a civil action, it has been said that "if such evidence is proper, then a
person may screen himself from the punishment due to fraudulent con-
duct, till his character becomes bad. Such a rule of evidence would
be extremely dangerous. Every man must be answerable for every
improper act, and the character of every transaction must be ascertained
by its own circumstances, and not by the character of the parties."
And to the same effect is *Thompson v. Bowie*, 4 Wallace (U. S.), 470.

Upon the question of damages the charge could not have been con-
ceivably more favorable to the defendant. He had unjustly and illegally
repudiated his contract, as the jury have said, and his Honor required
the jury to find that the defendant had not only resold the potatoes, in
the exercise of ordinary prudence and reasonable care, and with proper
regard for the defendant's interests, but that he had taken due precau-
tion to prevent damage, or any increase of damage, beyond that which

naturally and reasonably resulted from the breach of the contract, and was within the contemplation of the parties. The court further charged upon the damages that if there was a breach of the contract by the defendant, and the plaintiff kept possession of the potatoes in order to sell them for defendant's account, he was bound to do so with reasonable care, skill, and prudence, and if he put them in the market for sale, in the exercise of ordinary care and diligence, he would be entitled to recover the difference between the contract price and the market price, or what by reasonable and proper effort he was able to realize from a sale of the potatoes in open market.

The defendant contends that they should have been sold in Beaufort, where they were delivered to the defendant, but the evidence does not show that they were delivered there with any agreement or understanding that they should remain there or be sold in that place; on the contrary, what evidence there is bearing on this question tends to show that they were intended to be shipped beyond Beaufort for sale, and presumably in New York, which market evidently controlled prices in the locality of Beaufort.

The jury have found that the defendant broke the contract between him and the plaintiff for the sale and purchase of the potatoes, and his purpose now is to cast all of the risk of any loss by a resale upon the plaintiff, assuming none of it himself, though his own breach of the contract brought about the necessity for the sale. The plaintiff testified that he could not sell the potatoes advantageously in Beaufort, where the market price responding to that generally had declined, so that, being already loaded in the car for the purpose, they were shipped to New York and placed in the care of his commission merchant, or broker, for resale, and the jury have found that in this respect the plaintiff exercised proper care and diligence in putting them on the best market, as soon as possible, and in selling them. The resale was fair, made in good faith, and in a mode best calculated to produce the real value of the goods, or the best price fairly and reasonably obtainable by the proper observance of the general usages of trade and a compliance with the general requisites of a resale, which should measure the rights and injuries of the parties. *Sawyer v. Dean,* 114 N. Y., 467; 24 R. C. L., secs. 379 and 380. If the plaintiff resold the goods for his own account or benefit, the evidence tends to prove that he acted prudently and with perfect good faith, and otherwise conducted himself throughout the transaction in compliance with the custom of the trade in such matters, and for the best advantage of the defendant, the defaulting buyer, keeping the resultant damages within proper bounds.

The case was correctly tried, and defendant has no just or legal ground for complaint.

No error.