GARNER HUTCHINS AND WIFE, CLEOTA HUTCHINS, v. MYRTLE B. DAVIS.

(Filed 9 March, 1949.)

**1. Judgments § 17b—**

A judgment must be supported by and conform to the verdict in all substantial particulars, and therefore where the verdict contains no finding sufficient to impose liability upon one of the parties, such party's exception to the signing of the judgment will be sustained.

**2. Bills and Notes § 34—**

Where the maker admits execution of a note and chattel mortgage and the nonpayment of the note, nothing else appearing, the payee is entitled to judgment on the pleadings, and the submission to the jury of the question of the maker's liability on the note is error.

**3. Election of Remedies § 3—**

Where the purchaser is induced to buy certain property by the actionable fraud of the seller, the purchaser within a reasonable time after the discovery of the fraud must elect between the inconsistent remedies of repudiating the sale or affirming it, and the purchaser's voluntary act in recognition of the validity of the contract after discovery of the fraud constitutes an election and terminates his power to repudiate his purchase.

**4. Sales § 25—**

Ordinarily, the purchaser will not be allowed to repudiate the contract of purchase unless he is in a position to restore to the seller what he has received under it.

**5. Same—**

Where the purchaser elects to repudiate the sale for fraud, he is entitled to be placed in *statu quo ante*, and therefore he should return or offer to return to the seller the property received by him, and he is then entitled to recover the purchase price, which he may do either by independent action or by counterclaim in the seller's action for the purchase price or any part thereof remaining unpaid.

**6. Sales § 28—**

Where the purchaser, after discovery of the fraud, elects to retain the property, he is entitled to set up by way of counterclaim in the seller's action to recover the balance of the purchase price, the damages sustained by him by reason of the fraud, which ordinarily is the difference between the value of the property sold and its value if it had been as represented.

**7. Same—**

In the seller's action on a note given for the balance of the purchase price, the purchaser admitted the execution and nonpayment of the note and set up a counterclaim for fraud. *Held:* Judgment for the purchaser for the amount of damages resulting from the fraud as ascertained by the jury must be modified so as to permit recovery by the seller of the amount of the note with interest.

APPEAL by plaintiffs from *Clement, J.,* and a jury, at October Term, 1948, of MADISON.

On 27 May, 1946, Garner Hutchins, who is hereafter called the male plaintiff, made an oral sale of the equipment and good will of a business in Mars Hill, North Carolina, known as the Campus Corner Cafe, to the defendant, Myrtle B. Davis, for a consideration of $7,000.00. Defendant paid half of this sum in cash, and gave the male plaintiff her promissory note signed by her mother as surety for the other half. Sometime later the defendant's mother died, and thereupon the defendant took up the original note, giving the male plaintiff therefor another note for $3,500.00 executed by herself alone, and paying interest on the unpaid part of the sale price through 26 May, 1947. The new note specified that

it bore interest at the rate of six per cent per annum, and was to mature 24 May, 1948. Its payment was secured by a chattel mortgage embracing all of the equipment originally sold to defendant by the male plaintiff.

When the note fell due, the defendant refused to pay it, or to relinquish to the male plaintiff the property covered by the chattel mortgage. The male plaintiff thereupon brought this action, praying judgment against defendant for the principal and interest mentioned in the note and asking a foreclosure of the chattel mortgage under decree for satisfaction of the judgment. He laid claim to the immediate possession of the mortgaged property by ancillary claim and delivery process, but the defendant gave the required undertaking for replevy and retained the property.

Upon motion of defendant, the *feme* plaintiff, Cleota Hutchins, was made a party to the action. The defendant filed an answer, admitting the matters set out above and pleading counterclaims for damages for fraud and conversion. Plaintiffs replied, denying the validity of the counterclaims. The parties offered testimony for the avowed purpose of sustaining their respective pleadings.

As made out by her answer and evidence, the defendant's counterclaims were as follows:

By his contract with her, the male plaintiff undertook to sell to defendant for the agreed price of $7,000.00 all of the equipment and supplies located in the building at Mars Hill occupied by the Campus Corner Cafe on the day of the sale, together with the good will of the business and a lease which he professed to own on the building. Between the date of the making of the sale and 1 June, 1946, when defendant began to operate the cafe, the male plaintiff wrongfully removed from the Campus Corner Cafe and converted to his own use a portion of the supplies sold by him to defendant consisting of canned goods, flour, and sugar of the market value of $200.00. The monetary worth of the Campus Corner Cafe was derived largely from the advantageous location of the building in which it was housed. During the negotiations preceding and culminating in the sale, the male plaintiff made two positive representations to the defendant, one concerning a lease which he professed to hold on the building containing the cafe and the other relating to a freezing unit used in connection with a fountain in the building. The male plaintiff exhibited to defendant a copy of a lease dated 6 February, 1946, whereby Charlie C. Bruce and W. L. Robinson had leased the building occupied by the Campus Corner Cafe from its owners, Mattie I. Huff and O. J. Burnett, for five years with the right to renew the agreement at the end of the term for another period of five years, and represented to defendant that he had subsequently rented the building "for five years with the option for five more" under a written lease "just

HUTCHINS *v.* DAVIS.

like that" displayed by him, and that he would assign his written lease to defendant on demand in case she purchased the Campus Corner Cafe. This representation was false in that the male plaintiff had no written lease whatever, but occupied the premises as a mere tenant from month to month under an oral sublease from Bruce and Robinson. The male plaintiff also represented to defendant that a certain freezing unit then in use in connection with a soda fountain in the building was his absolute property whereas, in fact, such unit belonged to the Southern Dairies and was simply loaned by it to him for use on the premises during such time as its products were retailed there. The male plaintiff knew both of the representations to be false in the particulars stated, and made them with intention to deceive the defendant and cause her to purchase the Campus Corner Cafe. Defendant believed the representations to be true, and was thereby induced to purchase the Campus Corner Cafe from the male plaintiff for $7,000.00. Defendant suffered damage as the proximate result of the fraud in that the value of the Campus Corner Cafe was substantially less than it would have been if the statements had been true. The defendant did not discover the falsity of the representations made to her by the male plaintiff until about June, 1947, when the Southern Dairies removed the freezing unit from the premises and when she lost an opportunity to sell the Campus Corner Cafe at a considerable profit because of the inability of the male plaintiff to assign to her the written lease which he falsely professed to own. Since that time defendant has continued to carry on the cafe at the same stand, but has been unable to acquire any right to occupy the premises other than as a tenant from month to month.

Although no allegation pertaining thereto appears in the answer, the court permitted the defendant to introduce evidence to the effect that after the sale she paid $18.48 in settlement of taxes levied on the poll, dogs, and personal furniture of the male plaintiff, and submitted such testimony to the jury upon the eleventh, twelfth, and thirteenth issues. This was done over the exceptions of plaintiffs. The court subsequently reversed its rulings in these respects by refusing to award judgment to defendant for the amount of these taxes.

The court submitted seventeen issues. These issues and the answers of the jury thereto were as follows:

1. Did the defendant execute and deliver to the plaintiff a chattel mortgage and note as alleged in the complaint? Answer: Yes.

2. What amount, if any, is the defendant indebted to the plaintiff on said note? Answer: No.

3. Is the plaintiff the owner and entitled to the possession of the property set forth and described in the Chattel Mortgage? Answer: No.

HUTCHINS *v.* DAVIS.

4. Was Garner Hutchins the sole owner of the Cafe business sold to the defendant? Answer: No.

5. Did the plaintiff Garner Hutchins represent to the defendant that he owned a lease covering the Campus Corner Cafe at Mars Hill, N. C., in accordance with the terms of a lease dated 2 February, 1946, executed between Mattie I. Huff and O. J. Burnett to Charlie C. Bruce and W. L. Robinson, and would assign his said lease to the defendant? Answer: Yes.

6. Were the above representations of the plaintiff Garner Hutchins false and fraudulent and made for the purpose of deceiving the defendant? Answer: Yes.

7. Did the defendant rely upon said false and fraudulent statements and was she damaged thereby? Answer: Yes.

8. What amount, if any, is the defendant entitled to recover as damages by reason of the false and fraudulent representations made by the plaintiff? Answer: $3,500.

9. Did the plaintiff remove, after the sale, from said Cafe certain flour, canned goods and sugar? Answer: Yes.

10. If so, what was the value of said merchandise so removed? Answer: $200.00.

11. Did the plaintiff Garner Hutchins represent that the property sold to the defendant was free and clear of all encumbrances? Answer: Yes.

12. If so, was said statement false? Answer: Yes.

13. What amount, if any, is the defendant entitled to recover by reason of said representation? Answer: $18.48.

14. Did the plaintiff Garner Hutchins represent to the defendant that he was the owner of a freezing unit used in connection with the fountain in said cafe? Answer: Yes.

15. Was said statement false and fraudulently made for the purpose of deceiving the defendant? Answer: Yes.

16. Did the defendant rely on said statement, and was she damaged thereby? Answer: Yes.

17. What damage, if any, is the defendant entitled to recover as damages on account of such representations? Answer: $250.00.

The court adjudged that "the plaintiff have and recover nothing from the defendant" and that "the defendant have and recover from the plaintiffs both jointly and severally judgment in the amount of $3,950.00," and that "the plaintiffs pay the costs."

Plaintiffs excepted to the judgment and appealed, assigning errors.

*Carl R. Stuart and James S. Howell for plaintiffs, appellants.*
*Sanford W. Brown for defendant, appellee.*

ERVIN, J.   Nothing is better settled in law than the rule that in all cases tried by a jury the judgment must be supported by and conform to the verdict in all substantial particulars.   *Speight v. Anderson,* 226 N.C. 492, 39 S.E. 2d 371; *Supply Co. v. Horton,* 220 N.C. 373, 17 S.E. 2d 493; *Durham v. Davis,* 171 N.C. 305, 88 S.E. 433.   When the verdict of the jury in the case at bar is interpreted in the light of the pleadings, the evidence, the issues, and the charge, it is plain that it contains no finding sufficient to impose any liability upon the *feme* plaintiff, Cleota Hutchins, with respect to the counterclaims asserted in the answer of the defendant.   *King v. Elliott,* 197 N.C. 93, 147 S.E. 701; *Sitterson v. Sitterson,* 191 N.C. 319, 131 S.E. 641, 51 A.L.R. 760; *Merrill v. Tew,* 183 N.C. .172, 110 S.E. 850; *Croom v. Lumber Co.,* 182 N.C. 217, 108 S.E. 735; *Balcum v. Johnson,* 177 N.C. 213, 98 S.E. 532; *Weldon v. R.R.,* 177 N.C. 179, 98 S.E. 375; *Jones v. R. R.,* 176 N.C. 260, 97 S.E. 48; *Bank v. Wilson,* 168 N.C. 557, 84 S.E. 866; *Donnell v. Greensboro,* 164 N.C. 330, 80 S.E. 377; *McAdoo v. R. R.,* 105 N.C. 140, 11 S.E. 316. Hence, the court erred in adjudging that the defendant is entitled to recover anything of the *feme* plaintiff, Cleota Hutchins, upon the counterclaims, and her exception to the judgment is sustained.

It is otherwise, however, with reference to the male plaintiff, Garner Hutchins, for the reason that the answers to the fifth, sixth, seventh, eighth, ninth, tenth, fourteenth, fifteenth, sixteenth, and seventeenth issues fully support the adjudication that the defendant is entitled to recover $3,950.00 of the male plaintiff upon the counterclaims as damages for fraud and conversion.

But we are constrained to hold that the exceptions of the male plaintiff to the submission of the second and third issues and to the adjudication based on the answers of the jury thereto that such plaintiff was not entitled to recover of the defendant upon the note for $3,500.00 are well taken.   The execution of the note and chattel mortgage and the non-payment of the note were not issuable facts.   They were admitted by the answer, and the male plaintiff was entitled to judgment against the defendant on the pleadings for the principal of the note with interest thereon from 27 May, 1947.   This is true for the reasons set out below.

When a person discovers that he has been induced to purchase property by the actionable fraud of another, he has the right at the outset to choose between two inconsistent courses with reference to his purchase.   He may either affirm it or repudiate it.   But he cannot do both, either in whole or in .part, for the law will not let him blow both hot and cold.   The election must be made promptly and within a reasonable time after the discovery of the fraud.   When once made, the election is final and conclusive.   The purchaser terminates his power to repudiate his purchase

if he voluntarily does some act in recognition of the validity of the contract of purchase after discovering the fraud.

Ordinarily, the purchaser is not allowed to repudiate the transaction unless he is in a position to restore to the seller what he has received under it. Consequently, the purchaser should return or offer to return to the seller the property received by him under the sale if he desires to repudiate the transaction. When he has done this, he may resort to remedies calculated to place him in *status quo*. Thus, he can recover the purchase price or any portion of it he may have paid, or avail himself of the fraud as a defense in bar of recovery by the seller of the purchase price or any part of it which remains unpaid. Moreover, he may be entitled in a proper case to the equitable remedies of rescission and cancellation or reformation.

But the purchaser has the right at his election to affirm the contract of purchase and retain whatever property or advantage he has received under it. When he does so, the transaction is validated as to both parties, and either may sue the other to enforce any rights arising to him under the contract. In such case, the purchaser is liable to the seller for any portion of the purchase price which remains unpaid. While his affirmance ends his right to rescind the contract, it does not prevent him from recovering from the seller either in an independent action or by way of counterclaim when sued by the seller for the purchase price the damages sustained by him by reason of the fraud of the seller. As a general rule, the damages recoverable by the defrauded purchaser in such event consist of the difference between the value of the property sold as it was and as it would have been if it had come up to the fraudulent representations.

These legal propositions are fully sanctioned by many well considered decisions of this Court. *Randle v. Grady,* 228 N.C. 159, 45 S.E. 2d 35; *Small v. Dorsett,* 223 N.C. 754, 28 S.E. 2d 514; *Buick Co. v. Rhodes,* 215 N.C. 595, 2 S.E. 2d 699; *Frick Co. v. Shelton,* 197 N.C. 296, 148 S.E. 318; *Glass v. Fidelity Co.,* 193 N.C. 769, 138 S.E. 143; *Fields v. Brown,* 160 N.C. 295, 76 S.E. 8; *Van Gilder v. Bullen,* 159 N.C. 291, 74 S.E. 1059; *Machine Co. v. Feezer,* 152 N.C. 516, 67 S.E. 1004; *Modlin v. R. R.,* 145 N.C. 218, 58 S.E. 1075; *May v. Loomis,* 140 N.C. 350, 52 S.E. 728.

Here, the defendant affirmed the purchase of the Campus Corner Cafe by retaining the benefits received by her under the sale. Consequently, the male plaintiff was entitled to maintain an action against her on the note representing a portion of the purchase price, subject, of course, to any counterclaim she had against him.

We have carefully studied all of the remaining assignments of error and have found nothing therein prejudicial to any substantial right of the male plaintiff.

Our conclusions necessitate the grant of a new trial to the *feme* plaintiff. But it is not so with respect to the male plaintiff because the truth relating to all matters in controversy between him and the defendant has been determined by the verdict of the jury and the admissions in the pleadings. The judgment between the male plaintiff and the defendant is modified so as to award the male plaintiff judgment against the defendant on the note for the sum of $3,500.00 with interest at the rate of six per cent per annum since 27 May, 1947, and so as to tax against the male plaintiff all costs in the court below other than those incident to making the *feme* plaintiff a party to the action. As thus modified, the judgment between the male plaintiff and the defendant is affirmed. The costs of all parties in this Court will be taxed against the male plaintiff.

Judgment modified and affirmed on the appeal of the plaintiff, Garner Hutchins.

New trial on the appeal of the plaintiff, Cleota Hutchins.