## J. W. SANDERS COTTON MILL, Inc. v. CAPPS.

### Civ. A. No. 429.

United States District Court.
E. D. North Carolina, Wilmington Division.
May 2, 1952.

L. Arnold Pyle, Jackson, Miss., William E. Timberlake, Lumberton, N. C., for plaintiff.

Isaac C. Wright, Wilmington, N. C., Carl V. Venters, Jacksonville, N. C., for defendant.

GILLIAM, District Judge.

This action was brought to recover the alleged purchase price of certain tobacco bed cloth sold and delivered to defendant on February 16, 1951, together with interest from February 26, 1951, the date payment was due. The defendant defended on the ground that the cloth delivered to him was not constructed and packed according to the terms of the order. The defendant admits that he is indebted to plaintiff in the amount of $4,505.66, representing sales by him of a portion of the cloth less transportation charges incident to a return of the remainder. The case was heard without a jury in the Wilmington Division. The findings of fact are set forth herein.

On January 6, 1951, defendant telephoned James T. Duckworth, Charlotte, N. C., an independent selling agent, who had a working agreement with plaintiff's selling agent, to take orders for plaintiff's products and submit them to plaintiff for acceptance or rejection. In this conversation defendant placed an order for 300,000 yards of tobacco bed cloth, 150,000 yards 36″ 28 x 24, 15.00 weight @ .09⅓, and 150,000 yards 36″ 24 x 20, 17.00 weight @ .08¼. Defendant and Duckworth dicussed the kind, character, construction, and quantity of cloth desired by defendant; also delivery dates, price, terms of payment, method of packing and place of delivery.

The defendant and Duckworth differ on two points in respect to what was said in the conversation: defendant states that it was agreed by Duckworth that the cloth was to be made up with ¼″ tape selvage and packed in bolts of 80 to 100 yards and in bales of 3,000 yards; while Duckworth states that he made it plain that the cloth would be put up in rolls of 3,000 yards and made up with standard selvage.

On the day of this telephone conversation Duckworth reduced the order to writing, mailing the original to plaintiff's selling agent and a duplicate original to defendant; but this order erroneously quoted the price of the 24 x 20, 17.00 weight cloth at 8½¢ per yard instead of 8¼¢, as agreed in the telephone conversation. When this error was called to Duckworth's attention on January 9, 1951, he made up a corrected order on that day, mailing original to the selling agent and copy to defendant. This corrected order, which was the same as first order except for the price change noted, was as follows:

"Date: January 9, 1951

| | | |
|---|---|---|
| Ship to: Will Be Picked Up By Mr Capps Upon Receipt of Telegram Advising Goods Are Ready | Ship From: Delta Sales Corporation Jackson, Mississippi | |
| Terms: Net/10 days    Routing: P. V. Capps' truck | When: Feb. 15–22 | |

| Quantity: | Description: | Unit Price: |
|---|---|---|
| 150,000 yds.   36″ 28x24 | 15.00 weight Tobacco Cloth ROM | .09⅓ |
| 150,000 yds.   36″ 24x20 | 17.00 weight Tobacco Cloth ROM (3,000 yard rolls) | .08¼ |

Note: Please Note That Correction Is Only On The 17.00 Weight Cloth. Copy Of Correction As Sent To The Mill.          Thank you."

The order was accepted by plaintiff's selling agent and two copies of such acceptance, called a Sales Note, were mailed to defendant by first class U. S. Mail, postage prepaid, on January 12, 1951. The provisions of the Sales Note were identical with the corrected order except that the Sales Note called for "long cuts" while the order did not contain those words. This variation is of no significance.

On February 3, 1951, the order, at defendant's request, was reduced from 50 to 40 bales (or rolls) of each type of cloth; and on February 16, 1951, plaintiff delivered to defendant's agent at plaintiff's mill, Starkville, Mississippi, 79 rolls of tobacco cloth which was constructed with standard selvage rather than with $\frac{1}{4}$" tape selvage, and made up in rolls of 3,000 yards rather than being packed in bolts of 80 to 120 yards in bales of 3,000 yards.

The cloth delivered to defendant's agent consisted of 39 rolls of the 28 x 24 cloth, containing 119,903¾ yards, and 40 rolls of the 24 x 20, containing 120,017¼ yards, of the combined value under the order of $21,092.41.

This cloth so delivered to defendant's agent was manufactured and packed in accordance with the provisions of the confirmation order dated January 6, 1951, and in accordance with the corrected order of January 9, 1951, a copy of each of which was mailed immediately to defendant; and further, it was in accordance with the provisions of the sales note of January 12, 1951, by which the order was accepted by plaintiff, a copy of which also was immediately mailed to the defendant, postage prepaid.

While the cloth was not manufactured and packed in accordance with defendant's contention of the order which he gave Duckworth, in that it was made up with standard selvage rather than $\frac{1}{4}$" tape selvage and was wound on rolls of 3,000 yards rather than packed in bolts of 80 to 100 yards in bales of 3,000 yards, it was reasonably suited for the purpose intended, the covering of tobacco plant beds for protection, even if not, as defendant contended, as satisfactory as that constructed and packed as defendant claims it should have been.

Prior to February 21, 1951, defendant sold and delivered to customers 18 rolls of the cloth, 18,608¾ yards of the 28 x 24 construction and 36,519½ yards of the 24 x 20, having a total value of $4,749.18, according to the prices quoted by Duckworth to the defendant and according to the prices set out in both the typed confirmation of order and the sales note of plaintiff accepting the order.

On February 21, 1951, the defendant claimed for the first time that the cloth was not what he had bought, and he testified that in the course of the telephone conversation wherein he made his complaint Duckworth agreed that he, Duckworth, would take the remaining 61 rolls off the defendant's hands. Defendant testified further that Duckworth told him to dispose of what he could and that he, Duckworth, would thereafter give shipping instructions for the rest of the goods. Duckworth denied making such agreements and said that he only agreed to assist defendant in making disposition.

Plaintiff's first notice of defendant's complaint was received by it on February 27, 1951. On March 14, 1951, defendant asked the plaintiff for shipping instructions on the 61 rolls still on defendant's hands. Plaintiff refused to accept return of the goods and consequently furnished no shipping instructions. Hence, the unsold 61 rolls of cloth are still in defendant's possession.

On March 14, 1951, the same date on which defendant asked plaintiff for shipping instructions on the unsold 61 rolls, the defendant mailed to plaintiff's factor his check for $4,505.66, representing the contract price of the 18 rolls sold less $244 to cover delivery charges on the remaining 61 rolls. This check was tendered to plaintiff in full settlement of defendant's liability and upon its face was written, "account in full". The plaintiff elected not to present the check for payment because of the writing on its face, and has yet received nothing from the defendant for the cloth delivered to the defendant.

If plaintiff's contention about the contract is accepted, plaintiff is entitled to re-

cover the sum of $21,092.41, together with interest from February 26, 1951, inasmuch as payment was due under the contract ten days after delivery which was made on February 16, 1951, at plaintiff's mill.

On the other hand, if defendant's contentions prevail, the plaintiff is entitled to receive the sum of $4,505.66, the value of the 18 rolls sold and computed at the prices quoted less $244 to cover transportation charges incident to return of the goods to plaintiff, and, of course, is entitled to a return of the goods.

While I am of the opinion and find as a fact that the contract between the parties is to be found in the written confirmation orders and sales note acceptance, rather than in the telephone conversation between defendant and Duckworth, the end result must be the same in either event.

The evidence establishes beyond doubt that Duckworth was not an agent of plaintiff. He had no authority to make a contract for plaintiff and did not undertake to do so. He accepted the defendant's offer and submitted it to plaintiff. Whether he stated to the defendant that the cloth would be put up in bales and constructed with ¼" tape selvage or not makes no difference. It is certain that such statement is not reflected in the written confirmation of order which was mailed to plaintiff; for this order called for 3,000 yard rolls and contained no provision for ¼" tape selvage; nor is such statement reflected in the acceptance sales note which was identical in terms with the confirmative order. A copy of the confirmative order was mailed to defendant and he admits he received it. Two copies of the acceptance sales note were also mailed to him, though he testified that he never received them. In any event, he was fully advised by the confirmative order. Even though the defendant did not sign and return a copy of the sales note as contemplated, he later received the goods in question with full knowledge of the terms of the order as forwarded by Duckworth. There was no contract until the offer which came through Duckworth was accepted by plaintiff by its selling agent in Mississippi, and the only order it received was the written (typed) order which was introduced. If defendant's version of the conversation with Duckworth be accepted and if it be believed that the copies of the acceptance sales note were not received by defendant, the defendant's contention might have force if he had not accepted the goods with full knowledge of the terms of the order which Duckworth transmitted to plaintiff. Having done this, he cannot now escape payment upon the ground that the goods were not what Duckworth told him they would be. The goods delivered fully met the provisions of the confirmation order and acceptance sales note; and the defendant should pay in accord with the contract.

If it be assumed that the contract is to be found in the telephone conversation between Duckworth and defendant and that the order placed by defendant was just as he says it was, still, defendant is liable because even though it be true that the goods were not what he ordered and he, therefore, had a right to reject them, inasmuch as he disposed of 18 rolls of the cloth he did, by such conduct, accept them. It is well established law that where goods delivered vary substantially from the goods ordered the purchaser may at his option reject them, but it is likewise established that where, as here, there is a single order and only one transaction, the purchaser may not accept part of the shipment and reject the remainder. He must either affirm or repudiate. He cannot do both. Inasmuch as the contract was made in Mississippi and, according to its terms, was to be executed there, the Court concludes that the rights and liabilities of the parties are to be determined there; but it makes no difference in point of law, for the law of North Carolina, as well as that of Mississippi, is uniform in its determination that a purchaser cannot accept in part and reject in part. The following cases are illustrative on this matter. Hytken Brothers v. Hanover Children's Wear Co., Inc., 155 Miss. 478, 124 So. 654; S. P. Nelson & Sons v. Wilkins & Parks, 151 Miss. 492, 118 So. 436; Hutchins v. Davis, 230 N. C. 67, 52 S.E.2d 210.

The defendant contends, however, that assuming that the contract as originally made was to the effect asserted by the plaintiff, even so, the contract was cancelled by Duckworth in the telephone conversation on February 21, 1951, in which defendant claims that Duckworth agreed to take the 61 rolls off defendant's hands and thereafter give defendant shipping instructions thereon. But the defendant can find no relief upon this theory. In the first place, Duckworth had no authority to make a contract for plaintiff, and even had he had such authority it does not follow that he had authority to cancel a contract which he had made. The defendant has not shown that Duckworth had authority to cancel or that plaintiff ratified his action, if in fact Duckworth did undertake to cancel. The rule is that a party who relies upon cancellation by another party's agent has the burden of proving the authority of the agent. It is also the rule that authority of an agent to make a contract does not imply authority to cancel it. This rule is stated in Flowers v. Bush & Witherspoon Co., 5 Cir., 254 F. 519, 521, and other cases, and the rule seems to be one of general application by the courts. In the Flowers case the rule is stated in these words: "There is no evidence of Hooper's authority to cancel, unless it is to be implied from the authority to make, or from his actually having made, the contract. Both failing to be shown, and the burden being on the plaintiff in error to show the authority of the agent, the defense fails. Nor does authority to make a contract imply authority to cancel it." See also National Cash Register Co. v. Giffin, 192 Miss. 556, 6 So.2d 605; Dahnke-Walker Milling Co. v. T. J. Phillips & Sons, 117 Miss. 204, 78 So. 6.

By comparison, the strength of the instant case is apparent through the fact that here there was no evidence even of authority to make a contract.

Upon the facts found the Court is of the opinion that plaintiff is entitled to recover of the defendant the sum of $21,092.41, with 6 percent interest from February 26, 1951, and costs. A judgment to this effect will be entered.