L. E. JOHNSON v. JAMES MASSENGILL

No. 143

(Filed 28 January 1972)

**1. Evidence § 15; Witnesses § 5— character evidence**

Ordinarily, evidence as to the good or bad character of a party to a civil action who has not become a witness is not admissible, being irrelevant to the issues.

**2. Witnesses § 6— plaintiff's evidence of defendant's character — admission before defendant testified**

It was not reversible error to admit evidence offered by the plaintiff, otherwise competent, to show defendant's general character and reputation where defendant's counsel had announced that defendant would be a witness and indicated his intent to offer evidence as to defendant's reputation, which he subsequently did, since it is within the discretion of trial court to allow the examination of a witness out of the customary order.

**3. Witnesses § 5— character evidence — reputation in the community**

The general rule is that a witness, offered to prove the character of another person, may not testify as to his personal opinion concerning the character of such other person but is limited to testimony concerning the reputation of such person in the community.

**4. Witnesses § 5— character evidence — specific acts**

A witness called to prove the character of another person may not, on direct examination, be questioned with reference to specific acts of such person as indicative of his character.

**5. Appeal and Error § 52— testimony elicited by appellant — ground for new trial**

Defendant is not entitled to a new trial by reason of testimony which he, himself, elicited on cross-examination.

**6. Contracts § 26; Witnesses § 6— breach of contract — character evidence — evidence of defendant's breach of another contract — door opened by cross-examination**

In this action for breach of contract for the sale of potatoes, defendant's cross-examination of plaintiff's witness as to the basis for the witness' evaluation of defendant's character opened the door for testimony by the witness on redirect examination that defendant had previously broken a contract with the witness concerning the sale of potatoes.

**7. Witnesses § 6— character evidence — reputation with the witness**

While testimony of plaintiff's witness that "With us it [the defendant's character] is bad" was incompetent and should have been stricken upon motion by defendant, failure to strike such testimony was harmless error in the light of testimony by the witness' husband which was properly before the jury.

Johnson v. Massengill

8. Contracts § 25— breach of contract — issue of whether contract was entered

In this action for breach of contract for the sale of potatoes, the trial court did not err in failing to submit an issue as to whether the parties had entered into a contract as alleged in the complaint, where defendant did not deny plaintiff's allegations as to the making of the contract or the terms thereof and did not allege a different contract, and where defendant made no demand for the submission of such an issue. G.S. 1A-1, Rule 49(c).

ON *certiorari* to the Court of Appeals to review its decision, reported in 12 N.C. App. 6, 182 S.E. 2d 232, finding no error on appeal by defendant from *Hall, J.,* at the 15 January 1971 Session of JOHNSTON.

The plaintiff sues for breach of contract of sale. The complaint alleges in Paragraph 2: "That on or about the 9th day of January 1969, the plaintiff entered into a contract with the defendant wherein and whereby the plaintiff agreed to purchase 15,000 bushels of potatoes at .$4.00 a bushel or a total of $60,000.00; and the defendant agreed to sell to the plaintiff 15,000 bushels of potatoes at $4.00 a bushel." The complaint further alleges that the plaintiff paid the defendant the agreed purchase price but the defendant delivered to the plaintiff only 12,233 bushels, whereby the plaintiff was damaged in the amount of $11,068.

Answering the complaint, the defendant alleged: "Paragraph Two is not denied." He denied the allegation of short delivery and the allegation of damages. For further answer, the defendant alleged that, on 9 January 1969, he had in excess of 15,000 bushels of sweet potatoes stored in the plaintiff's warehouse, that he paid the storage charges thereon and "on said date sold to the plaintiff all of said sweet potatoes * * * the sale price to cover 15,000 bushels at $4.00 per bushel." Payment by the plaintiff to the defendant of $60,000 "for said potatoes" is admitted. The further answer denies that the defendant made any warranty or guaranty that "said lot of potatoes would measure out at least 15,000 bushels, or any given number of bushels, after shrinkage and loss by rot and other causes," and denies any breach of contract.

The evidence of both parties shows that at the time of harvesting his crop, the defendant stored in the plaintiff's warehouse 15,000 boxes or crates of sweet potatoes, each box being

designed to hold approximately one and one-ninth bushels as an allowance for the normal shrinkage of potatoes after digging. In the potato trade a box and a bushel are synonymous. The potatoes were loaded on the defendant's trucks by his employees in his fields, being placed in the trucks on pallets, on each of which rested 30 boxes. Upon arrival at the warehouse, the plaintiff's employees unloaded the potatoes by pallets and stacked the pallets in an area of the warehouse by use of a fork-lift truck. At that time no sale by the defendant to the plaintiff was contemplated. The resulting stack of boxes was substantial in height, width and length, so that the contents of boxes at the bottom and in the interior of the stack could not be inspected without disturbing the stack. Storage charges, computed on the basis of 15,000 bushels, were paid by the defendant. On 9 January 1969, the defendant sold and the plaintiff bought the potatoes at the price of $4.00 per bushel and the plaintiff paid the defendant $60,000. The boxes were open at the top and the top layer of boxes were filled with potatoes of good quality.

The plaintiff's evidence is to the effect that when he began to "run" the potatoes after the purchase he found many boxes only one-third full, some empty and some with only a few potatoes therein. After giving the defendant full credit for all rotted potatoes, the stack contained only 12,126 bushels.

The defendant's evidence was to the effect that all boxes delivered by him to the plaintiff's warehouse were fully packed with high quality potatoes and that the extent of shrinkage in sweet potatoes after digging varies from crop to crop.

The jury found that the defendant did commit a breach of the contract and the plaintiff was damaged thereby in the amount of $8,644.

The defendant appealed, assigning as error: 1. The admission, over objection, of testimony of witnesses for the plaintiff to the effect that the defendant's character was bad, this evidence being based upon the witnesses' own opinion of his character, based, in turn, as to each witness upon transactions between the witness and the defendant; and (2) the court's instruction to the jury that the defendant admitted the contract and its failure to submit an issue as to whether the plaintiff "entered into a contract with the defendant as alleged in the complaint."

The Court of Appeals found no prejudicial error.

*N. Leo Daughtry and J. R. Barefoot for plaintiff.*

*Grady & Shaw by Philip C. Shaw; and George B. Mast, P.A. for defendant.*

LAKE, Justice.

In the oral argument it became clear that the printed record did not disclose the setting in which the evidence, to the admission of which the defendant excepts, was introduced. By stipulation of the parties, the stenographic transcript of the entire trial was filed "as the correct statement of case on appeal as appropriate." Under the special circumstances of this case, we have so considered it.

Mrs. Garland Barefoot, called as a witness for the plaintiff prior to the offering of any evidence by the defendant, testified that she and her husband operate the Meadow Farm Storage and have been in the potato business "for quite a while." She knows the defendant and has had dealings with him in potatoes over the past several years. She knows his general reputation and character in the community. In response to the question, "What is it?" she replied, "With us it is bad." The defendant moved to strike. The witness then stated, "With us, I don't know I am not going to say about other people. I don't have anything to do with other people." The defendant's motion to strike was overruled. The witness then said she dealt with Mr. Massengill in 1968 and purchased his potatoes.

The court sustained defendant's objection to the plaintiff's question to this witness, "What was the agreement on his part with reference to the quality of the potatoes?" The ground for the ruling was that the plaintiff was not inquiring about the transaction involved in the present action. The court also sustained the defendant's objection to this question by the plaintiff, "Mrs. Barefoot, did he false pack any potatoes on you?"

On cross-examination, this witness testified that she doesn't have anything against the defendant. She knows nothing about the transaction involved in the present action. She purchased a crop of potatoes from the defendant in the past. Employees of the witness and her husband picked up these potatoes, put them in boxes, loaded them and "took them in."

On re-direct examination, this witness testified that those potatoes were all right "because our crew picked them up." The court sustained the defendant's objection to this question by plaintiff: "Was the potatoes that his crew picked up all right?"

Mrs. Barefoot was succeeded on the witness stand by her husband, Garland Barefoot, who testified on direct examination that he has been in the business of growing sweet potatoes and operating a warehouse for the storage of potatoes twelve or fifteen years and had business dealings with the defendant over that period of time. In response to the question, "What has been the extent of the business you have done with him?" the witness replied, "It turned out to be satisfactory." The defendant objected that the answer was not responsive. The court sustained this objection and stated that the witness might answer the question. Thereupon, the witness testified that he did business with the defendant on two occasions. He knows the defendant's general reputation and character in the community. "It generally is not good." The first time he knew the defendant the witness and his wife purchased some potatoes from him.

The court sustained objections by the defendant to the following questions: "Did that transaction turn out satisfactory?" and, "Was there any false packing of potatoes?" This concluded the direct examination of this witness.

On cross-examination, Mr. Barefoot testified that the defendant has stored potatoes with him. Sometimes the witness buys potatoes stored by others in his warehouse. On one occasion the defendant first sold potatoes stored in the witness' warehouse to the plaintiff in the present lawsuit. The witness did not like this because the defendant "didn't stand up to the agreement." He protested vigorously and, as a result, "got" those potatoes.

To the defendant's question, "And they were stored in your warehouse and you wanted the potatoes, didn't you?" the witness responded, "There is a big detail about that." The defendant's counsel said, "Answer my question." Thereupon, plaintiff's counsel, out of order, interposed: "All right. Go ahead and explain it? He's asked for it, explain it."

Thereupon, the witness, still on cross-examination, testified that on that occasion the defendant tried to sell his pota-

toes to the witness for a price which the witness was not willing to pay, so the defendant stored the potatoes in the witness' warehouse and they agreed that at the appropriate time the defendant and the witness would sell the potatoes and would "split the profit" realized over and above the price which the defendant had asked the witness to pay.

At this stage, the plaintiff's attorney, out of order, injected this question, "Did he keep the agreement?" The witness replied, "No, he didn't." To this there was no objection by the defendant, whose counsel continued the cross-examination after the court admonished counsel to examine the witness one at a time.

On such further cross-examination, the witness testified that the potatoes in question were the property of the defendant and he had a right to sell them "but he didn't have a right to break a promise." The witness "got the potatoes" at the price which the plaintiff in the present action had then offered the defendant for them. The witness paid the defendant such price because "I had to do it or not get the potatoes." Defendant's counsel then asked, "And you fell out with Mr. Massengill because of that transaction, didn't you?" The witness replied, "Well, I told him I never weren't going to have anything else to do with him." Defendant's counsel then asked, "And that is what you based your character-opinion on, isn't it?" The witness answered, "Well, there is a big tale in before that if you want me to tell you?" The plaintiff's counsel then interjected, again out of order, "Go ahead and explain what it is?" Defendant's counsel, however, said: "Wait a minute, answer my question. You based your character question and answers, they were based on what you have just described here to the jury?" The witness said, "I will say yes."

On re-direct examination by the plaintiff, this witness was asked, "Was there anything in addition to that you based it [his opinion] on?" Over objection, he answered that the time he met the defendant he went to the defendant's field and looked at the potatoes being dug. He agreed to buy the defendant's whole crop "if he would do his job as good as he was doing it then." The defendant dug potatoes for two or three more days and the witness stacked them in the warehouse. One morning the defendant sent three truckloads to the warehouse. The witness looked at them and told the defendant's sons, who had

brought them: "Them ain't the kind of potatoes we'd agreed on. You will have to leave with them." This the defendant's sons did. The objection to those potatoes was, "There were potatoes in there that shouldn't be in there and they were slack packed and I told the boys, I said I don't want no such potatoes in my house taking room when they are supposed to be good ones."

On re-cross-examination, the defendant's counsel asked: "I will ask you again now, if the business transaction that you yourself have had with Mr. Massengill if that isn't what you based your character evidence on?" The witness replied: "That's right, and I was told by people or people told me beforehand that you'd better not deal with him, but I went ahead and did." The witness got "upsot" because the defendant didn't stand up to the agreement.

At this stage, the defendant moved to strike the testimony of this witness, which motion was overruled.

The defendant testified in his own behalf at length. In the course of his testimony on direct examination, he set forth his version of the transaction with the witness Garland Barefoot. The defendant also offered, through several other witnesses, evidence of his own good character and reputation.

[1, 2]    Ordinarily, evidence as to the good or bad character of a party to a civil action who has not become a witness is not admissible, being irrelevant to the issues. *Pearce v. Barham,* 267 N.C. 707, 149 S.E. 2d 22; *Merrill v. Tew,* 183 N.C. 172, 110 S.E. 850; *Marcom v. Adams,* 122 N.C. 222, 29 S.E. 333; Stansbury, North Carolina Evidence, 2d Ed., § 103. We need not determine whether the nature of the present action is such as to bring this case within an exception to the general rule. See, *Marcom v. Adams, supra.* Evidence of the plaintiff's good character was offered and received without objection from the defendant prior to the calling of Mr. and Mrs. Barefoot as witnesses. At that time, the defendant's counsel announced that the defendant would be a witness and indicated his intent to offer evidence as to the defendant's reputation, which he subsequently did. Under these circumstances, it would not be reversible error to admit evidence offered by the plaintiff, otherwise competent, to show the defendant's general character and reputation. It is within the discretion of the trial court to allow the examination of a witness out of the customary order.

*State v. Smith,* 218 N.C. 334, 11 S.E. 2d 165; *Earnhardt v. Clement,* 137 N.C. 91, 49 S.E. 49; Stansbury, North Carolina Evidence, 2d Ed., § 24.

[3, 7]　The general rule is that a witness, offered to prove the character of another person, may not testify as to his personal opinion concerning the character of such other person but is limited to testimony concerning the reputation of such person in the community. *Edwards v. Price,* 162 N.C. 243, 78 S.E. 145; Stansbury, North Carolina Evidence, 2d Ed., § 110. A witness who testifies that he does not know the general reputation of the person in question may not properly testify as to the character of such person. *State v. Ellis,* 243 N.C. 142, 90 S.E. 2d 225; *State v. Coley,* 114 N.C. 879, 19 S.E. 705. Measured by these standards, the testimony of Mrs. Barefoot concerning the character of the defendant was incompetent and the motion of the defendant to strike her answer, "With us it is bad," should have been allowed.

[4]　It is also the rule that a witness called to prove the character of another person may not, on direct examination, be questioned with reference to specific acts of such persons as indicative of his character. *Tillotson v. Currin,* 176 N.C. 479, 97 S.E. 395; *Nixon v. McKinney,* 105 N.C. 23, 11 S.E. 154; Stansbury, North Carolina Evidence, 2d Ed., § 111. Thus, nothing else appearing, it would not have been competent for the plaintiff, on the direct examination of his witness, Mr. Barefoot, to introduce evidence that the defendant, on an entirely different occasion than the one here in controversy, had broken a contract with Mr. Barefoot concerning a sale of potatoes.

[5, 6]　The difficulty with the defendant's contention on this appeal concerning the testimony of this witness is that the plaintiff did not do that, though his questions to this witness, to which the court sustained objections, were aimed in that direction. It was the defendant, on cross-examination, who drew from Mr. Barefoot the testimony concerning the transaction between him and the defendant. He is not entitled to a new trial by reason of testimony which he, himself, elicited on cross-examination. *Justice v. Justice,* 25 N.C. 58. By his question as to the basis for the witness' evaluation of the defendant's character, he opened the door to the question propounded by the plaintiff on re-direct examination. Thus, there was no error in admitting the exceedingly damaging testimony brought forth thereby.

[7]  The defendant is not entitled to a new trial by reason of the testimony of Mr. Barefoot. That testimony being properly before the jury, the error above noted in permitting Mrs. Barefoot to testify, "With us it [the defendant's character] is bad," fades into the realm of harmless error and does not justify the granting of a new trial. "Verdicts and judgments are not to be set aside for mere error and no more. To accomplish this result it must be made to appear not only that the ruling complained of is erroneous, but also that it is material and prejudicial, and that a different result likely would have ensued, with the burden being on the appellant to show this." *Perkins v. Langdon,* 237 N.C. 159, 178, 74 S.E. 2d 634. We find no basis for the belief that had Mrs. Barefoot's testimony been stricken, as it should have been, the verdict would have been different, Mr. Barefoot's testimony remaining, properly, in the record.

[8]  There was no error in the failure of the trial court to submit an issue as to whether the plaintiff "entered into a contract with the defendant as alleged in the complaint" or in the instruction to the jury that the defendant admitted the contract. Paragraph 2 of the complaint alleged the making of the contract and the terms thereof as contended by the plaintiff. Paragraph 2 of the answer states, "Paragraph Two is not denied." The further answer does not allege a different contract. Rule 8(d) of the Rules of Civil Procedure provides, "Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading."

The issues to be submitted to the jury are those raised by the pleadings and supported by the evidence. *Wheeler v. Wheeler,* 239 N.C. 646, 80 S.E. 2d 755. In *Fairmont School v. Bevis,* 210 N.C. 50, 185 S.E. 463, this Court said: "The defendant in her answer admitted the contract sued on by the plaintiff, as alleged in the complaint. No issue was raised by the pleadings with respect to the contract. For that reason, it was error for the court to submit to the jury, over the objection of the plaintiff, the first issue [Was there a contract entered into between the plaintiff and the defendant, as alleged in the complaint?], and to charge the jury that the defendant contended that they should answer the issue 'No.' "

Furthermore, Rule 49(c) of the Rules of Civil Procedure provides:

"(c) Waiver of jury trial on issue.—If, in submitting the issues to the jury, the judge omits any issue of fact *raised by the pleadings or by the evidence,* each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the judge may make a finding; or, if he fails to do so, he shall be deemed to have made a finding in accord with the judgment entered." (Emphasis added.)

Neither the record on appeal, nor the transcript supplied in supplement thereof, discloses any demand by the defendant for the submission of an issue as to whether a contract as alleged in the complaint was made by the parties.

No error.