STATE OF NORTH CAROLINA v. ELDRIDGE WATSON

No. 7414SC504

(Filed 7 August 1974)

**Criminal Law § 85— character evidence — reputation among narcotics users — specific occurrences — personal opinion — acts of misconduct**

In a prosecution for possession and sale of heroin wherein defendant testified but offered no evidence of his character, the trial court erred in permitting police officers to testify as to defendant's reputation among a small group of narcotics users, to base testimony as to defendant's reputation on specific occurrences, to state a personal opinion as to whether defendant's character was good or bad, and to list specific acts of misconduct for which defendant was not being tried.

ON *certiorari* to review the order of *Bailey, Judge,* entered at the 21 November 1972 Session of DURHAM County Superior Court.

The defendant was charged in two bills of indictment alleging the felonious possession of a controlled substance, heroin, and the sale of controlled substances. Pleas of not guilty were entered to each charge. From a verdict of guilty and the imposi-

tion of a five year sentence on each count, the defendant gave notice of appeal.

Officer C. R. Thompson testified that he was a public safety officer of the City of Durham. He stated that he went to the premises of the defendant on 8 March 1972, with an informer. They engaged in conversation with the defendant for a couple of minutes, and the informer asked the defendant "What is happening?". Officer Thompson testified that this means in street vernacular, "Do you have any heroin to sell?" Officer Thompson further explained that the answer "Everything is happening" is an affirmative answer and "Nothing is happening" is a negative response. The defendant replied "Everything is lovely". The informer then told the defendant that he wanted to "cop two bags", which meant that he wanted to buy two bags of heroin. The defendant gave the informer two bags, and the informer gave the defendant $16.00 in return. The informer and the officer then left the scene and turned the substance contained in the bags over to the police. It was subsequently identified as heroin.

The defendant testified that he had been a resident of Durham for thirty-two years and had resided at the same address for the past seventeen years. He denied having seen Officer Thompson on the date in question or at any other time prior to the trial. He denied ever having used, possessed, or sold heroin.

*Attorney General Robert Morgan, by Associate Attorney William A. Raney, Jr., for the State.*

*Loflin, Anderson and Loflin, by Thomas F. Loflin III, for the defendant.*

CARSON, Judge.

Following the testimony summarized above, the State presented its case on rebuttal. It first called Lt. T. H. Lassiter of the Durham Police Department. After stating his duties with the police department, which included responsibilities for the vice squad and narcotic law enforcement, Officer Lassiter was asked if he was familiar with the character and reputation of Eldridge Watson in the community in which he resides. He answered,

"[w]ell, since December of last year when I started working with the vice squad, I think one of the first names that I

heard mentioned in regards to heroin pushers, a person that sells heroin, was Eldridge Watson, alias Ted Watson, and since that time I have talked to a number of informers, a number of addicts, who tell me they have bought heroin from Mr. Watson, and I would say no less than 20 people, different people. I can say from my information from other people that use heroin that at least for the past year or past eleven months he has been involved in the sale of heroin."

The defendant objected to this answer and moved to strike it. The trial court did not rule on the motion but stated that the witness had not yet said what his character and reputation is. Subsequently, the witness was asked "Would you say his character is good or bad?" The witness answered "I would have to say it was bad." The defendant again moved to strike, but his motion was denied.

The next witness called was Captain G. S. Lee of the Durham Police Department. After relating his experience and duties with the police department, which included direction of the vice squad, he was asked if he knew the character and reputation of Eldridge Watson in the community in which he resides. His answer was "His reputation is that of a heroin distributor". The defendant again objected and moved to strike. His motion was again denied. Captain Lee continued to testify as follows:

"[a]nd his character is poor insofar as the known addicted citizens in that neighborhood are concerned. I have had occasion to spend hours watching Mr. Watson or his house or his car, through binoculars at night. I have seen him on numerous occasions drive down on Violet Street to the former residence of Bonnie Lee Daye, in either a pickup truck he drove or his Ford. At the same time an addict would come to the house and Mr. Watson would go in. The addict or small pusher would then leave, and then Mr. Watson would drive back to his house. This has been repeated on many occasions.

I have seen him in the company of numerous heroin addicts and pushers, including the top hierarchy of the Durham structure. I have engaged in conversation with Mr. Watson about this business prior to his ever being caught and asked him to get out of it, and which he did not. My men

have found heroin in his car and I have searched his house without results.

Captain Lee was then asked about conversation with the defendant concerning the drug traffic. He answered "Yes sir. I caught him coming from his stash on Willard Street one night, and it scared him, and he walked up to the car. There was another heroin addict in his truck waiting, a man that has testified in this court for the state, and I later talked to that man and he told me what transpired." Again, the defendant objected and again it was overruled.

The answers of the law enforcement officers were neither responsive nor admissible. Although the defendant testified concerning his lack of knowledge of the use or sale of narcotics, he did not offer separate evidence of his character. Consequently, he could only be impeached as any other witness. 2 Stansbury's North Carolina Evidence (Brandis Revision), Character, § 108. His general character and reputation in the community where he is well-known was admissible only as to his veracity as a witness. *State v. Norkett,* 269 N.C. 679, 153 S.E. 2d 362 (1967) ; *State v. Austin,* 4 N.C. App. 481, 167 S.E. 2d 10 (1969). Although the State could rebut defendant's testimony that he had never seen Thompson with evidence that the officer had had earlier dealings with defendant, the answers went entirely too far, and the trial court made no effort to correct these mistakes.

First, his reputation must be established in the community in which he has a well-known or established reputation. *State v. McEachern,* 283 N.C. 57, 194 S.E. 2d 787 (1973) ; 29 Am. Jur. 2d, Evidence, § 347. It is not sufficient that it be established among a small group of people, such as the twenty narcotics users mentioned. *State v. Smoak,* 213 N.C. 79, 195 S.E. 72 (1938) ; *State v. Hodgin,* 210 N.C. 371, 186 S.E. 495 (1936). Secondly, it must be general in character and must not be based on specific occurrences. *Johnson v. Massengill,* 280 N.C. 376, 186 S.E. 2d 168 (1972) ; 2 Stansbury's North Carolina Evidence (Brandis Revision), Character, § 111. Finally, it was improper of the witness to give his personal opinion as to whether or not the character of the defendant was good or bad. *Johnson v. Massengill, supra.* In addition to the erroneous materials introduced on the question of character and reputation, the answers contained other objectionable material. The statements were rank with hearsay evidence. Furthermore, they listed specific acts of

misconduct for which the defendant was not being tried. While we recognize that law enforcement officers are most anxious to obtain convictions against those whom they consider to be the chief suppliers of narcotic drugs, the law enforcement officers must be very vigilant not to cause new trials by their over-zealous conduct on the witness stand. At the very minimum, the trial court should have stricken the answers of the witnesses and instructed the jury not to consider them. The answers were not only highly improper, they were also highly prejudicial. For these reasons we feel that a new trial must be awarded.

New trial.

Judges PARKER and VAUGHN concur.