STATE v. CALVIN COLEY AND THOMAS COLEY.

*Murder—Degrees—Trial—Evidence—Character Witness—*
*Opinion of Witness—Sanity.*

1. A witness will not be allowed to testify as to character until he shall have first qualified himself by stating that he knows the general reputation of the person in question.

2. It is settled that the Legislature may by a saving clause in an act retain the provisions of the existing law in force as to all crimes committed prior to its passage; hence, the Act of 1893, changing the degrees of homicide and providing unequivocally that it should operate prospectively, does not apply to homicides theretofore committed.

3. Where, in the trial of two persons for murder, it appeared that in a mutual affray and an unequal contest between the deceased, who was unarmed, and the two defendants, one of the latter threw deceased to the ground and held him there while the other procured an axe and crushed his skull, it was not error to instruct the jury that the defendants were guilty of murder, the circumstances of the holding by one and the hitting by the other defendant being inconsistent with the legal conception of a killing in the heat of passion engendered in an encounter.

4. While testimony as to mental capacity falls within the exception to the rule that no witness, other than qualified experts, shall be allowed to express his opinion in a matter submitted to the

inquiry of a jury, yet insanity cannot be proved by general reputation or hearsay.

5. It is the right of a defendant to be present when anything is said or done at the trial that may prove prejudicial to his interests; but where no instructions were given to the jury in the absence of the defendant he cannot complain that the Court, in his absence, · asked the jury if they desired any further instructions.

INDICTMENT for murder, tried at January Term, 1894, of FRANKLIN Superior Court, before *Bynum, J.,* and a jury.

The testimony was that the deceased, S. Tucker, a Jew peddler, came to the house of Lucy Brewer and Pinkie Williams, in Gold Mine Township, late in the evening in July, 1892, and there met the defendant Cal. Coley. Later the defendant Tom Coley came to the house also. All ate supper together and the deceased was asked to stay all night. The defendant Cal. accused the deceased of being the man who had charged him with being a "kinkey-head nigger," which the deceased denied.

Cal. Coley, one of the defendants, testified that "after eating supper we got into the passage and began talking. The peddler said he was tired, and pulled off his clothes and lay down on the bed; then got up and went out. I asked him if he was not the man who called me a "kinkey-head nigger"; he said "no"; I asked him twice; he said "no," and rose for a fight; took hold of me and I of him; we scuffled two or three minutes; I had no weapon; he had on his underclothes; my brother took part with me; he held him and I hit him; we did not scuffle more than five minutes before I struck him; I did not know whether he took his pistol out or not; could not see whether he had a pistol in his hand or not, but he had one, for I found it in his valise after he was dead; he was attempting to fight me as much as I did him; I only hit him one lick; Tom held him on his side; I hit him with the eye of an axe;

we took his body into the woods and burnt his clothes and pack; got $159 in money."

The testimony of the woman, Lucy Brewer, was that in the scuffle Cal. Coley called for an axe, which Tom carried to him: that Tom refused to strike deceased with the axe, whereupon Cal. told Tom to hold deceased and he would strike him, which he did, the deceased begging them the while not to kill him; that after carrying the body into the woods, covering it with pine-straw and burning the clothes and peddler's pack, they took the money found on his person and all went to Norfolk, Va.

In December, 1893, persons hunting found the remains, and upon inquiry and investigation they were ascertained to be those of S. Tucker. Lucy Brewer, having returned to the neighborhood, was suspected, and charged with the murder, or complicity in it, and shortly made a confession, and her testimony was used for the arrest and conviction of the defendants.

At the trial, upon the close of the testimony, the defendants' counsel insisted that the Act of 1893, dividing the crime of murder into first and second degrees, applied to this case, and that it was the province of the jury to say in this case, under proper instructions, whether defendants or either of them were guilty of murder in the first or second degree or of manslaughter. His Honor instructed the jury that if they believed the testimony of the defendant Cal. Coley, both the defendants were guilty of murder in the first degree, as the Act of 1893 was not applicable. Defendants excepted.

Upon the trial the defendants proposed to ask a witness what was the general reputation of Tom Coley for sanity, but upon objection the question was not allowed, and defendants excepted.

After the jury had taken the case and had been out

about fourteen hours the Court caused them to be brought into the court-room, the prisoners not being present, and asked them if they were disagreed on any matter of law or fact. They replied, "On a question of fact." Thereupon his Honor said, "I cannot aid you in that,"· and they again retired. Defendants' counsel excepted because the prisoners were not present. At 5:30 o'clock on Saturday the jury were again sent for and asked the cause of their disagreement. One of the jurors replied that they were uncertain as to the meaning of one of the instructions that had been given. The prisoners were then brought into Court, and in response to the request of the jury the Court repeated the instruction referred to.

The Court then said, "I have given you the law; your oaths require you to return your verdict in accordance with the law and the evidence, and if from the facts, as you find them to be and the law as I have laid it down to you, you are satisfied beyond a reasonable doubt that the defendants, or either of them, is guilty of murder, you should return that verdict."

The defendants excepted, first, because the prisoners were not in the court-room when the Court made the first inquiry of the jury, and, second, because what was said to the jury in regard to their duty as to their oaths in returning a verdict of murder.

The jury returned a verdict of murder, and from the judgment thereon the defendants appealed.

*The Attorney General,* for the State.
*Mr. F. S. Spruill,* for defendants (appellants).

AVERY, J.: No principle of evidence is more clearly settled in North Carolina, nor by a longer line of decisions, than that a witness will not be allowed to testify as to

character until he shall have first qualified himself by stating that he knows the general reputation of the person in question. *State* v. *Wheeler*, 104 N. C., 893; *State* v. *Gee*, 92 N. C., 756; *State* v. *Perkins*, 66 N. C., 126; *State* v. *Parks*, 3 Ired., 296. This the witness failed to do, and the objection to the proposed testimony as to character was properly sustained. There was no error in the refusal of the Court either to instruct the jury that they could return a verdict of murder in the second degree (under the Act of 1893) or that it was in their power to return a verdict for a less offence than murder. It is settled beyond all room for dispute that the Legislature in the act repealing a law may by a saving clause retain the provisions of the existing law in force as to all crimes committed prior to its passage. *State* v. *Halford*, 104 N. C., 874.

The controversies that have heretofore provoked discussion have arisen upon the question whether particular language could be construed as implying a legislative intent to limit the operation of an act to offences committed after its passage and leave the pre-existing law in force as to those previously committed. *State* v. *Massey*, 103 N. C., 356; *State* v. *Long*, 78 N. C., 571; *State* v. *Williams*, 97 N. C., 455; *State* v. *Putney*, Phillips' Law, 543. As the purpose that the Act of 1893 should operate prospectively and that the common law should remain in force as to homicides committed prior to its passage is expressed in unequivocal terms in the proviso to the act, we think that the question whether the offence with which the prisoners are charged should be classified as murder in the second decree did not arise.

The view presented by the testimony of the prisoner Calvin Coley is that most favorable to the defence, and though he stated that there was a mutual affray, commencing between the deceased and himself, he admitted

that his brother, the prisoner Thomas Coley, from the first took part with him and very soon after the engagement began had the deceased upon the ground and held him down while he (the prisoner Calvin) got the ax and knocked him in the head. This witness admitted that the deceased used no pistol or other weapon and was engaged in an unequal encounter with two men. When, in such an unequal contest, the deceased was thrown to the ground and pinioned there by one while the other crushed his skull with an axe, the slight provocation shown was not sufficient to mitigate the offence of killing with a deadly weapon and with such deliberate cruelty. The force used was excessive and the manner of using it evinced the fixed purpose to kill. They were not acting on the defensive, because the deceased was held prostrate upon the ground, nor under the *furor* of one who, blinded by the momentary passion provoked by an assault, strikes without deliberation. The holding of the deceased by one till the other procured the axe, and the slaying by the other of a person so perfectly helpless, is inconsistent (because of its deliberate character) with the legal conception of a killing in the heat of the passion previously engendered in an encounter.

There was no error in giving the instruction numbered 16, and which embodies the principle we have stated.

The general rule is that no witness, other than such as are declared by the Court upon examination to be experts, shall be allowed in the face of objection to express his opinion upon matters to which the inquiry of a jury is being directed. One of the exceptions to this rule is that any person who has sufficient intelligence to testify as to any subject is allowed to express an opinion upon a question of the sanity of another person, to be weighed by the jury according to their estimate of its value. But while testimony as to mental capacity falls within the exception

to the rule governing the admissibility of proof of opinions, we know of no principle upon which hearsay evidence of what experts or non-experts have thought or said of the sanity or insanity of a particular person can be made competent. The attempt to prove insanity by general reputation was not less objectionable and incompetent than would have been the attempt to show by a third party what a particular individual thought or said.

It was the right of the prisoners to be present when anything was said or done that might prove prejudicial to their interests, but the Court gave the jury no instructions in their absence. They had no ground to complain, because the Judge took the precaution to inquire whether the jury desired any such information as would make it necessary to send to the jail for them. In repeating the instruction previously given, and in giving the admonition complained of, we do not think that the Judge overstepped the limit of his power by expressing or even intimating an opinion as to the facts.

Upon a careful review of all of the exceptions we are of opinion that there is                                   No Error.