STATE v. J. WALL ELLIS.

(Filed 23 November, 1955.)

**1. Homicide §§ 11, 22—**

In a prosecution of a wildlife protector for homicide, it is error for the court to exclude defendant's testimony tending to explain that he was on the property of deceased's brother for the purpose of discharging a duty of his office, particularly in view of instructions predicating his right to kill in self-defense upon whether he was a trespasser upon the property or was there in the discharge of the duties of his office.

**2. Criminal Law § 40d—**

A witness may not testify as to defendant's bad character when the testimony is not based upon defendant's general reputation and character in the community in which he lives, but upon defendant's reputation in the community in which the homicide occurred, since character evidence may not be based upon the opinions which any person or any number of persons have expressed, unless such opinions have created or indicate defendant's general reputation.

**3. Same—**

Where a character witness testifies that he does not know the general character of defendant, he is disqualified as a character witness against defendant.

APPEAL by defendant from *Huskins, J.,* July Term, 1955, of AVERY.

Criminal prosecution tried upon a bill of indictment charging the defendant with the murder of one Charlie Young. The homicide occurred in Mitchell County, but the cause was transferred to Avery County for trial pursuant to motion for change of venue.

This case was here at the Spring Term, 1955. The opinion of the Court granting a new trial is reported in 241 N.C. 702, 86 S.E. 2d 272. The facts stated in our previous decision will not be restated herein except in so far as it may be necessary to an understanding of this appeal.

When this cause was again called for trial, the solicitor announced, as he did at the former trial, that he would not prosecute the defendant for murder in the first degree, but would ask for a verdict of murder in the second degree, or manslaughter, as the evidence might warrant.

The defendant again, under plea of not guilty, admitted the intentional killing and assumed the burden of justification.

The evidence tends to show that the defendant, a man 64 years of age, had served at the time of the trial below for more than ten years as a Wildlife Protector for the State of North Carolina; that during nine of the ten years he had been stationed in Mitchell County.

The homicide occurred on 5 April, 1954. The trout season had opened that day and the defendant had been assigned three other Wildlife enforcement officers to assist him in his work. They had spent the day in various parts of Mitchell County in the performance of their duties. About 5:00 o'clock in the afternoon they were on their way to take one of the deputies home when they came upon two boys and an older man fishing in a trout stream. The boys did not have licenses, and the older man left the scene without being checked. Thereupon, the officers, in an effort to head him off, returned to their car and drove up the road, across the bridge spanning the creek, and parked. One of the deputies walked down to the stream where the older man was talking with other fishermen. The defendant followed some little distance behind the deputy; the other two deputies remained in the car. When the defendant crossed a board fence some 30 feet from the car on his way to the trout stream, Charlie Young, who had not been seen by the defendant, called to his brother, Ralph Young, who was standing nearby, and said, "Ralph, can't you get that s.o.b. off your land?" The additional facts with respect to what occurred that lead to the death of Charlie Young are fully set out in our former opinion.

The jury returned a verdict of guilty of manslaughter. From the judgment imposed, the defendant appeals, assigning error.

*Attorney-General Rodman and Assistant Attorney-General Love for the State.*

*Charles Hughes, Robert Lacey, Nance & Barrington, G. D. Bailey, and W. E. Anglin for defendant.*

DENNY, J. The evidence tends to show that for several years there had been considerable ill feeling between the deceased and the defendant. Therefore, the State vigorously contended in the trial below that the defendant shot and killed the deceased, not while acting in his official capacity as Wildlife Protector but because of his malice and ill will toward him, and was, therefore, not acting in good faith as a peace officer. Notwithstanding this contention on the part of the State, when the defendant undertook to explain why he was going to where his deputy had gone to check the license of the man they had been following, the court sustained the State's objection thereto and would not permit the jury to consider his explanation, which was as follows: "The reason I went was because it is customary for the game warden, the game protector of the county to take charge of the citations, if any are to be written, and take care of proceedings in law, and that is why I went down there to the fishermen."

We think this was prejudicial error. Particularly in view of the fact that the court submitted this phase of the case to the jury strictly in accord with the State's contention. His right of self-defense in every portion of the charge was conditioned upon whether he was a trespasser upon the property of Ralph Young, or whether he was there in the discharge of his duties as a Wildlife Protector. The express language of the charge, to which Exception No. 62 is directed, is as follows: "He (the defendant) had a right to be where he was at the time of the alleged shooting if he were there in the capacity of Wildlife Protector, engaged in the discharge of his duties, as such, that is, engaged in the discharge of his official duties. It is a matter for you gentlemen to decide, whether he was actually engaged in that capacity."

Furthermore, the defendant having testified in his own behalf, and having offered numerous witnesses who testified they knew his general character and reputation in the community in which he lived, and that it is good, the State offered testimony tending to show that the character of the defendant is bad. One of these witnesses, the Reverend Bruce Buchanan, testified that he was the pastor of Roan Mountain Church; that he knew the general character and reputation of Ralph Young and Dewey Young, brothers of the deceased, and of Mrs. Charlie Young, wife of the deceased, and that the character of each is good. He was then asked if he knew the defendant, and he stated that he knew him only when he saw him. He said: "Personally, I do not know his general character." He was then asked this question: "Do you know it from the esteem in which he is held in the community in which he lives, what the people generally say about him?" Answer: "Yes. Well, it certainly is not good. It is bad." Exceptions were interposed to the question and answer and were overruled. However, on cross-examination, this witness said: "I don't know what his (J. Wall Ellis') reputation is in his community. I am not talking about just the Young community, but in my own immediate community. Yes, that is the Young community. I don't know what it is in the community in which he lives." Thus, this witness was permitted to testify that the defendant's character is bad, based not on his general reputation and character in the community in which he lives, but on what people generally say about him in the Young community where the homicide occurred. The witness, without any limitation as to the community in which the defendant lived, or otherwise, testified on direct examination that he did not know his general character. This disqualified him as a character witness against the defendant.

In S. v. Parks, 25 N.C. 296, Gaston, J., speaking for the Court on this subject, said: "It is essential to the *uniform* administration of justice, which is one of the best securities for its *faithful* administration, that

the rules of evidence should be steadily observed. Among these, the rule which regulates the admission of testimony, offered to impeach the character of a witness, is now so well established and so clearly defined, that a departure from it must be regarded as a violation of law. The witness is not to be discredited, because of the opinions which any person or any number of persons may have expressed to his disadvantage, unless such opinions have created or indicate a *general reputation* of his want of moral principle. The impeaching witness must, therefore, profess to know the general reputation of the witness sought to be discredited, before he can be heard to speak of his own opinion or of the opinions of others, as to the reliance to be placed on the testimony of the impeached witness."

*Avery, J.,* in delivering the opinion of this Court in *S. v. Coley,* 114 N.C. 879, 19 S.E. 705, said: "No principle of evidence is more clearly settled in North Carolina, nor by a longer line of decisions, than that a witness will not be allowed to testify as to character until he shall have first qualified himself by stating that he knows the general reputation of the person in question."

In considering the identical question now before us, our Court, in the case of *Edwards v. Price,* 162 N.C. 243, 78 S.E. 145, said: ". . . it is only competent to ask the witness if he 'knows the general character of the party.' If he answers 'No,' he must be stood aside. If he answers 'Yes,' then the witness can, of his own accord, qualify his testimony as to what extent the character of the party attacked is good or bad."

It is said in Greenleaf on Evidence, section 461, "It is not enough that the impeaching witness professes merely to state what he has heard 'others say'; for those others may be but few. He must be able to state what is *generally said* of the person, by those among whom he dwells, or with whom he is chiefly conversant; for it is this only that constitutes his general reputation or character. And, ordinarily, the witness ought himself to come from the neighborhood of the person whose character is in question." *Gaines v. Relf, et al.,* 12 Howard 555, 13 L. Ed., page 1106.

Likewise, in 20 Am. Jur., Evidence, section 326, page 305, it is said: "Although there is some difference of opinion as to the kind of evidence by which character may be proved, the generally prevailing rule is that testimony to prove the good or bad character of a party to a civil action or of the defendant in a criminal prosecution must relate and be confined to the general reputation which such person sustains in the community or neighborhood in which he lives or has lived," citing numerous authorities.

For the reasons stated, we have concluded that the defendant is entitled to a new trial and it is so ordered. Therefore, it becomes

unnecessary to consider or discuss the remaining exceptions and assignments of error.

New trial.