STATE OF NORTH CAROLINA v. JERRY ELLIOTT AND
MELVIN WARREN

No. 7425SC1100

(Filed 16 April 1975)

1. **Criminal Law § 91— absence of prosecuting witness — recess proper**
   Where the prosecuting witness was examined but did not return
   after the lunch recess and did not leave word where he could be found,
   the trial court did not err in granting a recess for the afternoon
   rather than a mistrial.

2. **Criminal Law § 86— offense by prison inmates — findings of guilt of
   violations of prison rules — admission erroneous**
   In a prosecution for crime against nature allegedly occurring
   while defendants were in prison, the trial court erred in allowing the
   State to cross-examine defendants about convictions or findings of
   guilty for violation of prison rules and the imposition of disciplinary
   action by prison authority.

APPEAL by defendants from *Martin (Harry C.), Judge.*
Judgment entered 17 October 1974 in Superior Court, BURKE
County. Heard in the Court of Appeals 11 March 1975.

Both defendants pled not guilty to separate charges of
crime against nature with Leonard Shumate.

According to the testimony of the victim Shumate, age 17,
on Sunday, 17 March 1974, he was an inmate on the sixth floor
of the Western Correctional Center at Morganton. He was in
the Day Room at about 2:00 p.m. when he was approached by
the defendants who asked him to go the bathroom and talk
with them. He went to the bathroom as requested and there de-
fendant Warren, age 17, asked Shumate to "let him have it."
After refusing, Shumate started to walk out of the bathroom
whereupon defendant Elliott, age 18, grabbed him and pulled
him back in. Elliott then told him that if he would not submit,
he would "take it and . . . let everybody else get it. . . ." The
defendants then took Shumate down to his room where defendant
Elliott went inside with Shumate while Warren remained out-
side. Elliott began undressing Shumate who then unzipped and
dropped his pants. Elliott pushed him face down into the bed
and "screwed me in the ass" for about three or four minutes.
Elliott left; Warren came into the room and did the same thing.
He did not yell or scream though other inmates were nearby in
the Day Room. He tried to get up but they held him down by

the shoulders. He was afraid of them. Fifteen minutes after Warren left, a third man came in his room and homosexually assaulted him, after which Shumate went to the bathroom and then to the Day Room where he watched television with other inmates. Four days later Shumate was called to the office of Sergeant Pendley and asked about the attacks, and he told the officer about them. Warrants were issued immediately.

The State then offered the testimony of the doctor who examined Shumate on March 21. He testified that he saw no lacerations or any fisca around the anus and that he was unable to find any positive signs of an assault per anus, and it was his opinion that there would be lacerations if one was raped.

Defendant Elliott took the stand in his own behalf. He testified that during the period that Shumate claims the crime occurred, he was visiting with his mother, his father, his uncle, and his brother and sister down on the first floor. Captain Phillips of the Western Correctional Center stated that there were entries in the visitors log for the afternoon of March 17, listing the parents and uncle of defendant Elliott. Elliott further denied having committed the crime against nature with Shumate.

Defendant Warren testified that he did not see Shumate on the day in question.

The jury returned verdicts of guilty against both defendants, and from judgments imposing terms of imprisonment, the defendants appealed.

Further facts pertinent to the disposition of this case will be discussed in the opinion.

*Attorney General Edmisten by Assistant Attorney General Thomas B. Wood for the State.*

*Byrd, Byrd, Ervin & Blanton, P.A., by Thomas R. Blanton III for defendant Elliott; and Robert B. Byrd for defendant Warren.*

CLARK, Judge.

[1]   The direct examination of the prosecuting witness Shumate was conducted before noon, and the court then recessed for lunch. After lunch, Shumate did not appear to testify and could not be found. As a consequence, the trial judge ordered a recess

until 9:30 a.m. the following day. Defendants objected and moved to dismiss, but the motions were denied. Motions for mistrial were made the next morning, but were again denied. Shumate testified on cross-examination that he went home.

The same rules applicable to continuance should logically apply to the granting of recesses during the course of trial. *State v. Hailstock,* 15 N.C. App. 556, 190 S.E. 2d 376 (1972). It is established that rulings on motions to continue ordinarily rest in the sound discretion of the trial judge. *State v. Cavallaro,* 274 N.C. 480, 164 S.E. 2d 168 (1968). This same discretion carries over to the trial where it is recognized that " . . . the paramount duty of the trial judge is to conduct the course of a trial so as to prevent injustice to any party. In the exercise of this duty he possesses broad discretionary powers." *State v. Britt,* 285 N.C. 256, 271-72, 204 S.E. 2d 817, 828 (1974). Further, "[t]rial judges must be given sufficient discretion to meet the circumstances of each case." *State v. Bass,* 280 N.C. 435, 454, 186 S.E. 2d 384, 397 (1972).

In circumstances like those in the present case where a State's chief witness just takes the afternoon off without a word to anyone as to where he has gone or where he will be, we believe that the trial court in granting a recess for that afternoon rather than a mistrial did not abuse its discretion where defendants fail to show prejudice. We find no error in this action.

[2] During the defendants' presentation of their case, the State was allowed, over objection by counsel, to cross-examine each defendant relative to specific acts of misconduct and violations of prison rules while they were inmates in the custody of the Department of Corrections, and relative to guilty pleas on some of the charged violations. Generally, the cross-examination related to refusals to obey lawful orders, rioting, fighting, and the use of abusive and profane language toward prison officials. Such acts and conduct evince a lack of respect for authority, and a rebellious attitude. The good faith of the State was not questioned, it appearing that the District Attorney was basing the cross-examination on records provided by prison authorities.

It is established in this State that for purposes of impeachment a witness may be cross-examined about specific criminal acts or reprehensible conduct. *State v. Gainey,* 280 N.C. 366, 185 S.E. 2d 874 (1972) ; *State v. Williams,* 279 N.C. 663,

185 S.E. 2d 174 (1971). The scope of the examination may be broad, and limited only to a good faith basis for the question, to the control of the trial judge over questions that tend only to annoy or harass the witness, and to the witness's privilege against self-incrimination. 1 Stansbury, N. C. Evidence, Section 111 (Brandis rev. 1973). ·

Too, a plea of guilty on a former trial may be admitted against the defendant as an admission. *State v. Ingram*, 204 N.C. 557, 168 S.E. 837 (1933) ; *State v. Libby*, 209 N.C. 363, 183 S.E. 414 (1936). Though the violation of a prison rule by an inmate may not be a crime in the usual sense of the word, a plea of guilty to a charged violation of a prison rule is an admission by the defendant that he did in fact commit the alleged act, and, if relevant for the purpose of impeachment, it is admissible.

But the State went further and extended the scope of its cross-examination in asking both defendants about convictions or findings of guilty for violations of prison rules and the imposition of disciplinary action by prison authority. For example, the defendant Elliott was asked if he was found guilty of sticking his penis into another inmate's cell; and the defendant Warren was asked if he was convicted of getting into a fight and into a race riot. The trial judge overruled objections to both questions. In each instance the defendant replied that he was convicted or found guilty but did not commit the alleged acts.

In *State v. Williams, supra,* the Court details the nature and purposes of a bill of indictment, particularly criticizing it as "purely hearsay" and "based on ex parte evidence." While we recognize that certain incidents of due process are followed in a prison disciplinary hearing, it is obvious that such hearings do not have the standards of due process which we have in our trial courts.

We infer from *State v. Williams, supra,* that prior "convictions" are admissible because the protections that are afforded a defendant in a traditional trial assure him that his guilt has been fairly proved beyond a reasonable doubt. Indictments and warrant accusations, being findings not afforded these traditional protections, were held to be inadmissible. The solemnity of a trial assures one of a certain standard of proof, one sufficiently high that a finding of guilt is admissible in a later trial. A finding of guilt by prison officials in a disciplinary hearing

---

is not of such solemnity and verity. Consequently, we find that it was error to permit cross-examination of the defendants relative to convictions by a prison disciplinary board.

Under some circumstances the impeachment of a defendant witness by cross-examination relative to convictions by a prison disciplinary board may not constitute reversible error, but here the case for the State was based entirely on the unsupported testimony of the prosecuting witness that both defendants had committed the crime charged; both defendants testified and claimed innocence. Thus, credibility, a matter for the jury, was crucial, and there was a real danger that the testimony of the defendants was destroyed by evidence of "convictions" in a prison disciplinary board hearing where the standards of due process do not approximate those in a court of law.

The judgments as to both defendants are vacated and the causes remanded for

New trial.

Judges PARKER and HEDRICK concur.