STATE OF NORTH CAROLINA v. BARRY DARNELL WRIGHT

No. 8010SC1156

(Filed 2 June 1981)

### 1. Jury § 7.9— preconceived opinion—no challenge for cause

The trial court did not err in denying defendant's challenge for cause of a prospective juror who variously stated that she had formed an opinion, had formed "sort of" an opinion, and had not formed an opinion as to the guilt or innocence of defendant, since the trial judge, by clarifying the juror's answers, properly exercised his duty to insure that she would base her findings upon the evidence presented at trial and not upon preconceived opinions, and G.S. 15A-1212(6) requires that a juror be excused only when he is, in the trial judge's opinion, unable to render a fair and impartial verdict because of preconceived opinions as to defendant's guilt or innocence.

### 2. Automobiles § 112; Criminal Law § 45— school bus accident—test of brakes—admissibility of evidence

In a prosecution of defendant for involuntary manslaughter arising from an accident between the school bus he was driving and another vehicle, the trial court did not err in admitting testimony by a mechanic at the school bus garage concerning tests performed on the brakes of the bus subsequent to the accident, though the tests were not conducted under conditions similar to those existing when the accident occurred, since it would not have been reasonable or possible to test the bus under precisely the same conditions existing when the collision occurred; the dissimilarities were clearly pointed out to the jury on cross-examination and there could have been no confusion as to the differences in conditions; the witness testified that he was familiar with the bus and its brake system, described how the brakes operated, testified regarding his examination and tests of them at the accident site, and indicated that they appeared to be in working condition at that time.

### 3. Criminal Law § 50.1— testimony by non-expert—opinion evidence admissible

In a prosecution for involuntary manslaughter arising from an accident between a school bus driven by defendant and another vehicle, the trial court did not err in admitting opinion testimony by a witness who as not offered or qualified as an expert where the witness was allowed to testify that, in his opinion, if certain parts of the bus were damaged they would have a continuing rather than a one time effect on the brakes, since the witness testified that he had received high school and on the job training as a mechanic and had been employed in such capacity at the school bus garage for over six years; the witness was examined regarding his knowledge of and familiarity with the brake systems of school buses in general and with the particular bus involved; and he therefore was better qualified to form an opinion on the subject than was the jury, despite the fact that he was never formally qualified as an expert.

State v. Wright

4. **Automobiles § 112— school bus accident—defective brakes—hypothetical question proper**

    In a prosecution for involuntary manslaughter arising from an accident between a school bus driven by defendant and another vehicle where defendant contended that the brakes on the bus faded, the trial court did not err in allowing the State to ask defendant's expert witness a hypothetical question concerning brake fade if the vehicle did not stop but merely slowed at points, though there was no direct testimony that the bus had not stopped during the time after it left school until the collision, since there was testimony from which the jury could infer that defendant had made few or no stops during the trip, which would support the facts in the hypothetical question.

5. **Criminal Law § 86.5— defendant's school bus driving record—cross-examination proper**

    In a prosecution for involuntary manslaughter arising from an accident between a school bus driven by defendant and another vehicle, the trial court did not err in allowing the State to cross-examine defendant regarding complaints made against him about his bus driving record and his suspension as a school bus driver, since, once defendant offered testimony tending to show his exemplary school bus driving record, it was proper for the State to elicit further details in hope of presenting a complete picture less unfavorable to the State's case.

6. **Criminal Law § 85.2— character evidence—proper foundation for State's rebuttal evidence**

    There was no merit to defendant's contention that the trial court erred in admitting rebuttal character evidence of defendant's poor character without proper foundation, where defendant called three character witnesses, all of whom testified that he had an outstanding reputation in the community in which he lived; the State's character witness testified that he was familiar with defendant's character and reputation in the community; upon voir dire it was established that the witness's daughter was a student who rode the school bus defendant drove, and the witness had spoken with her, other children, and parents of children on the bus route; the witness testified that he did not talk with anyone whose opinion of defendant's reputation was contrary to his own; he indicated that his opinion was the consensus and that it was not based solely on incidents involving bus driving performance; and he delineated the community as that in which defendant worked.

7. **Automobiles § 114— intersection accident involving school bus—instructions proper**

    In a prosecution of defendant for failure to stop at a red light and for involuntary manslaughter arising from an accident involving the school bus which defendant was driving and another vehicle, there was no merit to defendant's contention that the trial court misstated the evidence and expressed an opinion in recounting the State's evidence, summarizing defendant's evidence, instructing the jury as to the allegations of the State and what the State must prove in order to obtain a verdict of guilty on the stop light charge, referring to the wrong intersection when listing the elements the State must prove, instructing the jury upon the standard of care involved in the charge on the red light violation, instructing the jury on the red light violation by stating that "defendant may not be found guilty of this charge

merely because he may have run the red light at another intersection . . . if you find that he did so," indicating that defendant could be found guilty of violating the statute regarding the red light if he entered the intersection when the signal was emitting a steady red light and he "could or should have stopped," and instructing on proximate cause and explaining the relevance of defendant's contention that the brakes on the bus failed to take hold.

APPEAL by defendant from *Herring, Judge.* Judgment entered 14 July 1980 in Superior Court, WAKE County. Heard in the Court of Appeals 6 April 1981.

Defendant was indicted for involuntary manslaughter and for failure to stop at a red light, a violation of N.C.G.S. 20-158. He pleaded not guilty to each charge.

The charges arose from a traffic accident at an intersection in Raleigh, North Carolina, on 12 May 1980. Defendant was driving a school bus that was involved in a collision with a grey Toyota automobile driven by Tracy Lea Calhoun. Ms. Calhoun died as a result of injuries she sustained in the accident.

Evidence for the state tends to show that defendant was driving the bus west on East Lenoir Street. As he approached the intersection with South Blount Street the traffic light turned red, and he proceeded into the intersection. The bus collided with the Calhoun automobile and then flipped over. A student riding on the bus testified that defendant did not stop for a red light at the previous intersection.

Mechanics for the Wake County school bus garage testified regarding inspections and tests performed on the brake system of the bus prior to and after the accident.

At the close of the state's evidence, the trial court denied defendant's motion for nonsuit.

Defendant presented evidence that tends to show the light was green as he approached the intersection. It turned yellow as he proceeded into the intersection. He saw a grey image in front of him and pumped the brakes, but the bus would not stop.

Defendant had reported brake problems to the school mechanics on three previous occasions. The mechanics were unable to find anything wrong with the brakes. Before the collision, defendant had driven six-tenths of a mile in heavy traffic, which had caused him to start and stop constantly and to ride the

brakes. An expert witness testified that under these circumstances brakes could fade. After a cooling period, the brakes could regain their original capabilities.

Character witnesses for defendant testified that his general character and reputation in the community were outstanding. After a voir dire hearing, a state's rebuttal witness testified, over defendant's objection, that defendant's reputation was poor.

At the close of all the evidence, the court denied defendant's renewed motion to dismiss the charges.

Additional facts necessary to the decision are set out below.

The jury returned verdicts of guilty on both charges. The trial court arrested judgment as to the red light violation. From a judgment imposing a split sentence, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General Donald W. Stephens, for the State.*

*Adam Stein and C. H. Thigpen, Jr. for defendant appellant.*

MARTIN (Harry C.), Judge.

[1] Defendant first contends that the trial court erred in denying his challenge for cause of a prospective juror. Although the record does not contain a transcript of the jury voir dire, it does show that the following proceeding took place in the judge's chambers:

COURT: Okay. Take this, that during voir dire of the jury by the defendant, the defendant having exercised six preemptory [*sic*] challenges, juror no. 4 responded to the following question—now, can you state what that question was, Mr. Thigpen?

MR. THIGPEN: Whether the juror had formed an opinion as to the guilt or innocence of the defendant.

COURT: The response was that she had formed an opinion; and upon further inquiry, juror no. 4 stated that she had formed, quote, sort of an opinion, end quote. And it was at this point that she was challenged for cause, wasn't it?

MR. THIGPEN: No. I think that it seems to me, Judge, that I questioned her again.

COURT: That there were other questions put to the juror which cannot be recounted at this time; that subsequently, the Court inquired of the prospective juror no. 4 as to whether or not regardless of any opinion formed she could base her finding upon evidence presented during the trial, irrespective of any such opinion; to which she responded that she could;

That counsel for the defendant subsequently was allowed to pursue the line of questioning further; the Court having denied defendant's challenge for cause; that again, in response to a question put to the prospective juror, she reiterated that she had formed an opinion sort of, but that her mind could be changed; that again the prospective juror stated that she could base her finding of fact upon evidence presented during trial and could set aside or disregard whatever opinion might have been formed based upon what she had heard, read or seen in the newspaper, radio or television;

That thereafter, in response to further questions by the State, as well as the Court, but primarily in response to questions put by the district attorney, the prospective juror stated that she had no opinion and had formed no opinion as to the guilt or innocence of the defendant as to the present charge of involuntary manslaughter and running a red light; and, further, that she was not even aware that these charges had been brought until very recently when she read of the same in the newspaper.

The trial judge must determine all challenges to the jury panel and all questions concerning the competency of jurors. N.C. Gen. Stat. 15A-1211(b) and 9-14. These determinations are within the trial court's discretion and its decision is not subject to appellate review unless an error of law is imputed. *State v. Noell*, 284 N.C. 670, 202 S.E. 2d 750 (1974), *death penalty vacated*, 428 U.S. 902 (1976).

Defendant contends that the trial judge was required to dismiss the juror under N.C.G.S. 15A-1212(6). The statute provides:

A challenge for cause to an individual juror may be made by any party on the ground that the juror:

. . . .

    (6) Has formed or expressed an opinion as to the guilt or innocence of the defendant. It is improper for a party to elicit whether the opinion formed is favorable or adverse to the defendant.

N.C. Gen. Stat. 15A-1212. Defendant would have us interpret this statute to require dismissal of any juror who has ever formed an opinion as to the guilt or innocence of a defendant. We do not agree. This interpretation would remove all discretion from the trial judge in determining whether the juror could render a fair, impartial, and unbiased judgment. *See State v. Leonard,* 296 N.C. 58, 248 S.E. 2d 853 (1978).

    In *State v. Spence,* 274 N.C. 536, 539, 164 S.E. 2d 593, 595 (1968), our Supreme Court noted that, according to federal court decisions, the function of a challenge for cause

    ". . . is not only to eliminate extremes of partiality on both sides but to assure the parties that the jury before whom they try the case will decide on the basis of the evidence placed before them and not otherwise." The purpose of challenge should be to guarantee "not only freedom from any bias against the accused, but also from any prejudice against his prosecution. Between him and the State the scales are to be evenly held." [Citations omitted.]

Although this provision has not been construed previously by the appellate courts, it appears that N.C.G.S. 15A-1212(6) was intended to codify the above-stated principle. This statute expressly overrules older case law that allowed challenge for cause only by the party against whom the opinion was formed or expressed. *See, e.g., State v. DeGraffenreid,* 224 N.C. 517, 31 S.E. 2d 523 (1944); *State v. Benton,* 19 N.C. 196 (1836).

    The official commentary to N.C.G.S. 15A-1212 contains the following: "To the extent possible the Commission has attempted to *restate* in this Article the rules governing selecting and impaneling the jury in a criminal case. This section incorporates the disqualifications set out in G.S. 9-3 and adds a number of additional grounds for challenge for cause." (Emphasis ours.)

    Thus, N.C.G.S. 15A-1212(6) apparently is a codification of the case law which requires that a juror be excused when he is, in the trial judge's opinion, unable to render a fair and impartial verdict

because of preconceived opinions as to defendant's guilt or innocence. This interpretation is consistent with subsection (9), which permits a challenge to be made on the grounds that a juror "[f]or any other cause is unable to render a fair and impartial verdict." N.C. Gen. Stat. 15A-1212(9). It seems unlikely that anyone who read or heard about a criminal case through the media would not form some sort of notion regarding an accused's guilt or innocence. To demand dismissal of every prospective juror who had prior knowledge of a case because he kept himself informed of current affairs arguably would "require our courts to exclude from service those best qualified to hear and deal with evidence and to understand instructions upon the law." *State v. Hunt*, 37 N.C. App. 315, 320, 246 S.E. 2d 159, 162, *disc. rev. denied*, 295 N.C. 736 (1978). *Accord, State v. Bailey*, 179 N.C. 724, 102 S.E. 406 (1920).

The record here indicates that the prospective juror variously stated that she had formed an opinion, had formed "sort of" an opinion, and had not formed an opinion as to the guilt or innocence of the defendant. By clarifying the juror's answers, the trial judge properly exercised his duty to ensure that she would base her findings upon the evidence presented at trial. *See State v. Simmons*, 286 N.C. 681, 213 S.E. 2d 280 (1975), *death penalty vacated*, 428 U.S. 903 (1976). A juror's answers need not be completely unequivocal or unambiguous for the judge to make his determination. *Id.* N.C.G.S. 15A-1212(6) does not mandate automatic disqualification of a juror who states she has "sort of" an opinion regarding defendant's guilt or innocence. It provides the *basis* for making a challenge for cause, and the voir dire examination serves to ascertain whether that cause in fact exists. *See State v. Young*, 287 N.C. 377, 214 S.E. 2d 763 (1975), *death penalty vacated*, 428 U.S. 903 (1976). Judge Herring was satisfied it did not.

We find no abuse of discretion in the trial court's ruling that this juror was competent to sit. Additionally, as we do not have before us the transcript of the voir dire, defendant has not demonstrated that he was prejudiced by the denial of his challenge for cause. *See id.* The assignment of error is overruled.

[2] Defendant's next exceptions deal with the admission of certain evidence. He argues that the trial court erred in overruling

his objections to the testimony of Gordon Edwards, a mechanic at the school bus garage, as to tests performed on the brakes of the bus subsequent to the accident. Edwards testified that at least one-half hour after the accident the bus was inoperable, was hooked up behind a wrecker, and was towed at approximately five to ten miles per hour. When the brakes were applied, the bus stopped. Defendant contends that the test was not conducted under conditions that were sufficiently similar to those existing when the accident occured, at which time defendant had driven the bus, loaded with thirty-five students, for some time through traffic, frequently using the brake pedal.

In *Hall v. Railroad Co.*, 44 N.C. App. 295, 298, 260 S.E. 2d 798, 800 (1979), *disc. rev. denied*, 299 N.C. 544 (1980), this Court stated:

> Normally, however, to be admissible, an experiment must satisfy two requirements: (1) it must be under conditions substantially similar to those prevailing at the time of the occurrence involved in the action, and (2) the result of the experiment must have a legitimate tendency to prove or disprove an issue arising out of such occurrence.

Whether an experiment was conducted under substantially similar conditions is a question of law, and is reviewable by the appellate courts. *State v. Jones*, 287 N.C. 84, 214 S.E. 2d 24 (1975). In *Jones*, the Supreme Court of North Carolina reviewed the law concerning experimental evidence and held there had been no error in allowing evidence of experiments conducted to determine if the pistol that had inflicted a fatal wound would fire when dropped from various heights. The Court explained that experiments need not have been performed under *precisely* similar circumstances, as long as the results would shed light on the problem at hand. It quoted with approval from *Love v. State*, 457 P. 2d 622 (Alaska):

> [I]f the differences of condition can be explained, so that the effect of those differences upon the experiment can be evaluated rationally, the judge may exercise his discretion and admit the evidence, for it can be helpful to the jury. . . .

> In applying the test of substantial similarity, the trial court should be guided by the following principles: Are the

dissimilarities likely to distort the results of the experiment to the degree that the evidence is not relevant? Can the dissimilarities be adjusted for or explained so that their effect on the results of the experiment can be understood by the jury? In this connection the court must consider the purpose of the experiment and the degree to which the matter under experiment is a subject of precise science. Absolute certainty is not required if the experiment would be considered valid by persons skilled or knowledgeable in the field which the experiment concerns.

287 N.C. at 97-98, 214 S.E. 2d at 33-34. Our Supreme Court concluded, "Precise reproduction of circumstances is not required, and the effect of the differences which existed was explainable by the State's expert witness." 287 N.C. at 99, 214 S.E. 2d at 34.

Discrepancies in conditions do not necessarily affect the admission of the evidence, but, rather, go to its weight with the jury. *State v. Brown*, 280 N.C. 588, 187 S.E. 2d 85, *cert. denied*, 409 U.S. 870 (1972).

Here, the witness testified that he was familiar with the bus and its brake system. He described how the brakes operate, testified regarding his examination and tests of them at the accident site, and indicated that they appeared to be in working condition at that time. The evidence had probative value in tending to show the normal braking capacity of the vehicle. It would not have been reasonable nor possible to test the bus under precisely the same conditions existing when the collision occurred. The dissimilarities were clearly pointed out to the jury on cross-examination, and there could have been no confusion as to the differences in conditions.

Furthermore, defendant was not prejudiced by the admission of the experimental evidence. Defendant offered a theory that the brakes had "faded." On cross-examination of the state's witness Henry Gibbs, another bus garage mechanic, the following explanation of brake fade was elicited:

Fading is a condition that occurs when you constantly use your brakes trying to slow down, linings get hot and your drums get hot. It is not just normal starting and stopping. And most times it is hard stops. What happens is that

the brakes heat up. And you lose friction when the brakes are applied. Then once the brakes cool down and you test them then it would be as if you have a full pedal. If you check the brake system you would not be able to find out whether fading had occurred. It is there while the lining and drums are hot. And when it is cooled off you have good brakes. And if the fading has occurred there is no way that you can test for it unless the brakes have been hot enough it's occurred several times and long enough to crystallize the linings.

Evidence was admitted without objection that there were no mechanical defects or crystallization in the brake system. The objected-to testimony was consistent with defendant's theory of brake fade and evidence presented by defendant's expert witness and cross-examination of the state's witnesses. *See* 4 Strong's N.C. Index 3d Criminal Law § 169.3 (1976).

[3] Defendant excepts to the admission of opinion testimony of Gordon Edwards without his being offered or qualified as an expert. Edwards was allowed to testify that, in his opinion, if certain parts of the bus were damaged they would have a continuing, rather than a one-time, effect on the brakes.

Generally, opinion evidence of a non-expert witness is not admissible because it invades the province of the jury. *State v. Fulton*, 299 N.C. 491, 263 S.E. 2d 608 (1980). The basic question in determining the admissibility of opinion testimony, however, is whether the witness is better qualified, through his training, skills, and knowledge, than the jury to form an opinion as to the particular issue. *Id.;* 1 Stansbury's N.C. Evidence §§ 132, 133 (Brandis rev. 1973). Edwards had testified that he had received high school and on-the-job training as a mechanic and had been employed in such capacity at the school bus garage for over six years. He was examined regarding his knowledge of and familiarity with the brake systems of school buses in general and with the particular bus involved. He therefore was better qualified to form an opinion on the subject than was the jury, despite the fact that he was never formally qualified as an expert. *See* 1 Stansbury, *supra*, § 133; *Rubber Co. v. Tire Co.*, 270 N.C. 50, 153 S.E. 2d 737 (1967). Additionally, defendant made only a general objection to the question calling for the witness's opinion, and has thus waived his objection. *Strickland v. Jackson*, 23 N.C. App. 603, 209 S.E. 2d

859 (1974); *Hedden v. Hall,* 23 N.C. App. 453, 209 S.E. 2d 358, *cert. denied,* 286 N.C. 334 (1974).

[4]   Defendant argues that it was error to allow the state to propound the following question to defendant's expert witness Dr. Zorowski:

> Q. Let's further assume that at that point after that 15 minute cooling time, under normal conditions, that the vehicle proceeds to travel over a six-tenths of a mile distance, didn't stop at any intersections, merely slowing at points during that period of time for other vehicles and never travels over 23 to 25 miles per hour, are those the kind of conditions, sir, that you are talking about which would produce brake fade.
>
>       . . . .
>
> A. Specific kind of conditions that you indicate there would not in my mind bring about severe brake fade, no.

Defendant contends that there was no evidence that the vehicle did not stop, but merely slowed at points. A hypothetical question must include only facts already in evidence or those which logically may be inferred from the evidence. *State v. Taylor,* 290 N.C. 220, 226 S.E. 2d 23 (1976); *Keith v. Gas Co.,* 266 N.C. 119, 146 S.E. 2d 7 (1966). While it is true that there was no direct testimony that the bus had not stopped during the time after it left the school until the collision, there was no testimony from the state's witnesses Sylvia Poole and Debbie Stephenson, passengers on the bus, that it had made any stops. Rather, Ms. Poole testified that defendant did not slow or stop at the previous intersection at Person and Lenoir streets, nor did he slow or stop at Blount and Lenoir streets. The jury, not unreasonably, could infer that defendant had made few or no stops during the trip, which would support the facts in the hypothetical question. *See Taylor v. Boger,* 289 N.C. 560, 223 S.E. 2d 350 (1976).

In any event, Dr. Zorowski had previously testified to the conditions under which brake failure might occur. He noted factors which would be more or less likely to cause the occurrence of brake fade, many of which were not in evidence. It was established that brake fade would generally not occur under the circumstances described in the hypothetical question. Dr. Zorowski

testified that it was possible that brake fade could have resulted under the circumstances alleged by defendant. The state was entitled to test the knowledge of defendant's expert. *See* 1 Stansbury, *supra*, § 136. We find no prejudice requiring a new trial. *See State v. Taylor, supra.*

[5]   Defendant contends that the trial court erred in allowing the state to cross-examine defendant regarding complaints made against him about his bus driving record and his suspension as a school bus driver. On direct examination defendant testified:

> [I] received a bus driver award for my bus driving in June of my 11th grade year, which was for completing a year of safe driving for 1979. . . .
>
>   . . . .
>
>    I have not been convicted of anything; no traffic offenses; never received a citation. The certificate that I received for Bus Driver of the Year was for completing the year successfully not having any major problems driving a bus.

On cross-examination he stated: "I got the Bus Driver of the Year award. Other people received the same award. I don't think that that was necessarily the Bus Driver of the Year. I remember what it said on the award, outstanding driver, outstanding service, something to that effect." Defendant's counsel later objected to the following line of questioning:

>    I have not been driving Bus No. 41 the entire time since October. It was until about November and then again about January. The reason for that is that in November 1979 I was suspended from driving a bus because of the complaints that had been received about my driving. . . .
>
>    Q. And isn't it true, Barry, that one of the complaints that had been lodged against you was that you had been racing another school bus side-by-side down the road?
>
>   . . . .
>
>    A. No, sir. I was never made aware that a complaint like that had been filed against me.
>
>   . . . .

Q. Isn't it a fact, sir, that one of the reasons that you were suspended was for failing to stop at a railroad crossing as is required?

. . . .

A. Not to my knowledge. I was never told anything about that.

Q. Do you remember doing just that back in October?

A. No, sir, I do not.

Q. Barry, have you in fact indicated that you were not given any of these complaints when you were suspended back in November of 1979?

. . . .

A. I haven't heard, not to my knowledge anything of the sort that you have just asked me about; other than my lawyers.

. . . .

I don't recall anyone telling me formally I was suspended. It started out as a couple of days and I got the run around about it and I finally got the message that I wasn't going to drive any more.

. . . .

Q. Did Mr. Myers give you a reason why he was suspending you, Barry?

A. Yes, sir, he did.

Q. What was the reason he gave you?

. . . .

The only complaint that he gave me was something about accused of asking a little girl for a Playboy book. I did not do that.

The trial court has wide discretion in controlling the scope of cross-examination and its rulings should not be disturbed unless prejudicial error is clearly demonstrated. *State v. Black*, 283 N.C. 344, 196 S.E. 2d 225 (1973); *State v. Ross*, 275 N.C. 550, 169 S.E.

2d 875 (1969), *cert. denied,* 397 U.S. 1050 (1970). It is true, as defendant argues in his brief, that for purposes of impeachment a defendant may be questioned regarding prior convictions, but not about arrests or criminal offenses unrelated to the present case. *State v. Williams,* 279 N.C. 663, 185 S.E. 2d 174 (1971). It is permissible, for impeachment purposes, to cross-examine a defendant about specific criminal or reprehensible acts, so long as the questions are asked in good faith. *State v. Gainey,* 280 N.C. 366, 185 S.E. 2d 874 (1972); *State v. Elliott,* 25 N.C. App. 381, 213 S.E. 2d 365 (1975). However, when a defendant, on direct examination, raises specific issues, the state may further investigate these subjects on cross-examination. *State v. Small,* 301 N.C. 407, 272 S.E. 2d 128 (1980). "On cross-examination much latitude is given counsel in testing for consistency and plausibility matters related by a witness on direct examination." *Maddox v. Brown,* 233 N.C. 519, 524, 64 S.E. 2d 864, 867 (1951). *Accord,* 1 Stansbury, *supra,* § 35.

In *Small, supra,* the defendant testified regarding a polygraph examination in such a way as to leave the false impression that the state had refused his offer to take a polygraph test. The Supreme Court held it was not error to allow the state to show that the test had in fact been given, and to go still further, allowing questions about whether the results showed deception.

Likewise, in the case sub judice, we hold that once defendant offered testimony tending to show his exemplary school bus driving record, it was proper for the state to elicit further details in hope of presenting a complete picture less unfavorable to the state's case. 1 Stansbury, *supra,* § 35.

[6] Defendant next contends that the trial court erred in admitting rebuttal character evidence of defendant's poor character without proper foundation. Defendant did not properly bring forward the assignment of error in his brief, but instead bases this argument on assignments of error referring to his motions for dismissal and the court's instructions to the jury recounting the rebuttal character evidence. This assignment of error is thus deemed abandoned. Rule 28(a), N.C.R. App. Proc. Nevertheless, we shall review defendant's argument on its merits.

Defendant called three character witnesses, all of whom testified that he had an outstanding reputation in the community

in which he lived. When a defendant so puts his character in issue, the state is permitted to offer evidence of his bad character, for both substantive and credibility purposes. *State v. Nance*, 195 N.C. 47, 141 S.E. 468 (1928); *State v. Adams*, 11 N.C. App. 420, 181 S.E. 2d 194 (1971); 1 Stansbury, *supra*, §§ 104, 108.

The state's witness Edward Dement testified he was familiar with defendant's character and reputation in the community. Upon voir dire, it was established that Dement's daughter was a student who rode the school bus defendant drove, and Dement had spoken with her, other children, and parents of children on the bus route. The trial court concluded that Dement's testimony was based upon an adequate foundation and allowed the witness to testify, without further objection, that defendant's reputation was poor.

The standard method of proving character is by reputation in the community, which means more than mere rumor and gossip, or a divided opinion, or the opinion among part of a community or a particular group. *State v. Davis*, 291 N.C. 1, 229 S.E. 2d 285 (1976). *See also State v. Ellis*, 243 N.C. 142, 90 S.E. 2d 225 (1955); *State v. Kiziah*, 217 N.C. 399, 8 S.E. 2d 474 (1940). Hearing a majority of people speak of the person is one way by which knowledge of reputation may be acquired. 1 Stansbury, *supra*, § 110.

The former rule that "community reputation" means the community in which the person resides has been modified.

[I]nquiry into reputation should not be necessarily confined to the residence . . . but should be extended to any community or society in which the person has a well-known or established reputation. Such reputation must be his *general* reputation, held by an appreciable group of people who have had adequate basis upon which to form their opinion. Of course, the testifying witness must have sufficient contact with that community or society to qualify him. . . .

*State v. McEachern*, 283 N.C. 57, 67, 194 S.E. 2d 787, 793-94 (1973) (emphasis in original).

Dement testified on voir dire that he did not talk with anyone whose opinion of defendant's reputation was contrary to his own. He indicated that his opinion was the consensus and that

it was not based solely on incidents involving defendant's bus driving performance. He delineated the community as that in which defendant worked, stretching "from the Lake Ann subdivision to the Washington school, which is half of Wake County." We hold this was sufficient.

The assignments of error regarding the evidence are overruled.

[7] The remainder of defendant's assignments of error deal with the court's charge to the jury.

Defendant sets out five instances in which he contends the trial court misstated the evidence and expressed opinion. The first occurred when Judge Herring recounted the state's evidence, stating that the brakes of the bus had been tested "shortly" before and after the collision. As Henry Gibbs had testified that he had checked the brakes on the Friday before the accident on Monday, we find this statement is supported by the evidence and does not constitute an expression of opinion.

Defendant excepts to the following portion of the court's summary of defendant's evidence: "That as he approached the intersection he saw the light was green and that he was in the right-hand lane; [that on looking again, the light was yellow and just before entering the intersection he saw a gray image, the Toyota automobile] . . . " Defendant had testified:

> As I arrived, I checked my light. The light was green. I proceeded into the intersection. I looked up and checked my light again. The light was yellow, and when I looked back down I saw a grey image in front of me and my first reaction was to stomp the brakes, which I did, twice at least. I stomped the brakes and immediately I turned the steering wheel as quickly as I could to the right . . ..

Defendant's witness Lynwood Martin, a passenger on the bus, had testified:

> [W]e got closer and closer up here to this curb stand, about right up in there, the light turned yellow and he was going into the intersection. He got right about up in there and then a little grey Toyota was coming in and then he held out, he said "Oh, my God" and then he grabbed the steering wheel

and started pumping on the brakes. We were getting further and further into the intersection and then he turned and that is all that I remember.

This testimony could be interpreted to mean that as defendant approached the intersection, the light was green, but as he proceeded into the intersection he looked up and found it had turned yellow. The record does not indicate that defendant made any objections to the charge before the jury retired. At the end of the charge, Judge Herring asked counsel if there was any further matter, and they indicated there was not. If objections to the charge in the review of the evidence and the statement of the contentions of the parties are not brought to the trial court's attention in order to allow for correction during trial, generally later challenge is waived. *State v. Gaines*, 283 N.C. 33, 194 S.E. 2d 839 (1973); *State v. Virgil*, 276 N.C. 217, 172 S.E. 2d 28 (1970). Only when an instruction contains a statement of a material fact not in evidence will such statement be considered prejudicial without its being called to the trial court's attention. *State v. Barbour*, 295 N.C. 66, 243 S.E. 2d 380 (1978); *State v. Foster*, 27 N.C. App. 409, 219 S.E. 2d 265 (1975). As the above-quoted statement arguably was supported by inferences from the evidence, we do not find it constituted a material discrepancy likely to confuse or mislead the jury. As the Court stated in *State v. Willard*, 293 N.C. 394, 407, 238 S.E. 2d 509, 517 (1977), "If the defendant deemed such variance as appears in the record to have been prejudicial to him, he should have directed this to the attention of the court in time for a correction prior to the verdict." Furthermore, Judge Herring thoroughly and carefully instructed the jury, both after the summary of the evidence and during his final mandate, that they were the sole judges of the facts and that they should rely on their own recollection of the evidence if it differed from that of the court. He advised them that nothing he said should be construed to be an opinion of the court.

The same analysis applies to defendant's exception to an additional portion of the summary of his evidence, set out, in pertinent part, as follows: "[T]hat the defendant did not enter the intersection when the light was red; that the light was yellow; that when he saw the light turn red and the gray or green image is when he applied his brakes . . ." Although it is true that defendant did not testify that he saw the light turn red, we cannot

hold this misstatement to be material enough to constitute reversible error in the absence of a request for correction. Defendant further insists that it exhibited an opinion by the judge that the light was not green as defendant entered the intersection. In light of the above discussion, and the fact that the judge expressly stated "defendant *did not* enter the intersection when the light was red" (emphasis ours), we do not agree. The exceptions are overruled.

The next exception pertains to a portion of the charge in which Judge Herring instructed the jury as to the allegations of the state and what the state must prove in order to obtain a verdict of guilty on the stoplight charge. He continued by telling the jury that defendant had pleaded not guilty to the charge and was presumed to be innocent until proven guilty beyond a reasonable doubt. The instructions must be taken in context. Isolated portions will not be considered error. *State v. Tomblin,* 276 N.C. 273, 171 S.E. 2d 901 (1970); *State v. Hall,* 267 N.C. 90, 147 S.E. 2d 548 (1966). We find that the statement is accurate when viewed in context and does not constitute an expression of opinion by the court. Defendant's exception thereto is without merit.

Defendant further complains that Judge Herring erred in referring to the wrong intersection when listing the elements the state must prove. The judge correctly designated the streets in the summary of the state's evidence and the parties' stipulations, in the instructions on the red light violation, and in the final mandate. We cannot conclude that the jury would have become confused or misled by this inadvertent reference. In the absence of defendant's bringing the error to the court's attention during trial, we do not find it to constitute a material, prejudicial misstatement sufficient to require a new trial.

Defendant next contends that in three instances the court erroneously instructed the jury upon the standard of care involved in the charge on the red light violation. All three instances occurred during the explanation of the law concerning that violation. In the first excepted-to portion, Judge Herring read the statute.[1] In two other instances, the court paraphrased and interpreted the

---

1. Although the trial court read the text of N.C. G.S. 20-158 as it appeared before the 1979 amendment, the meaning is substantially the same and did not prejudice defendant.

statute, describing the standard of care applicable only to the safety violation.

Defendant appears to be arguing that the jury could have mistakenly applied the standard necessary for the red light violation to the manslaughter charge, citing *State v. Weston*, 273 N.C. 275, 159 S.E. 2d 883 (1968). In *Weston*, the defendant was charged with the statutory violation of passing a stopped school bus and with manslaughter. The trial court instructed the jury that the defendant could be found guilty of involuntary manslaughter if they found that he failed to keep a reasonable lookout. The Supreme Court distinguished ordinary negligence from culpable negligence and ordered a new trial because the trial court had applied a civil liability test to a criminal action.

We find no such error in the instant case. The court applied the proper standard of care to the traffic violation charge, which requires only that the jury find defendant entered an intersection which was emitting a steady red signal, under circumstances where he could and should have stopped. N.C.G.S. 20-158 does not require a specific intent. On the manslaughter charge, the state must not only show that defendant violated a safety statute, but that he did so in a criminally negligent manner. *State v. Gainey*, 292 N.C. 627, 234 S.E. 2d 610 (1977). The court thoroughly and appropriately instructed the jury on this issue, defining culpable negligence to be a violation which was committed willfully or recklessly, with "heedless indifference to the rights of others."

Nor do we find the court erred in instructing the jury on the red light violation by stating that "defendant may not be found guilty of this charge merely because he may have run the red light at another intersection . . . if you find that he did so." Defendant does not except in the record to the testimony of Sylvia Poole to the effect that defendant had run the previous red light. Judge Herring was correct in instructing the jury that this evidence has no bearing on whether defendant was guilty of violating the traffic statute at the accident site. He later instructed the jury that this evidence was one of the factors they could consider to infer defendant's state of mind in determining whether he was culpably negligent regarding the manslaughter charge. We hold the law was properly applied to this evidence.

Defendant further contends the trial court erred, in one portion of the charge regarding the red light violation, by indicating that defendant could be found guilty of violating the statute if he entered the intersection when the signal was emitting a steady red light and he "could *or* should have stopped," (emphasis ours) rather than could *and* should have stopped. It is apparent from an examination of the entire charge that this was a *lapsus linguae.* In numerous other portions of the charge the correct wordage was used and each element of the offense was delineated. We cannot conclude that this misstatement was likely to confuse or mislead the jury. *See State v. Sanders,* 280 N.C. 81, 185 S.E. 2d 158 (1971); *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1 (1966), *cert. denied,* 386 U.S. 911 (1967).

Last, defendant argues that the court erred in its instructions on proximate cause by failing to explain the relevance of defendant's contention that the brakes failed to take hold.

Judge Herring instructed the jury on the law and defendant's contentions as follows:

[I]f the defendant made an effort to stop in obedience to the red light, but entered the intersection on a red light, due to a brake failure which he had no reasonable cause to believe would occur, he would not be guilty of violating this statute requiring one to stop in obedience to a red traffic signal light.

. . . .

. . . [D]efendant says and contends that . . . even if you do find that he entered the intersection on red, then you ought to find that he was unable to stop the vehicle by reason of brake fade or some other form of brake failure which prohibited and prevented him from stopping the vehicle and thus entered the intersection beyond his control; and he says that you ought to find him not guilty.

The judge further defined proximate cause in a proper manner, and defendant made no exception to this definition, nor did he specifically request additional instructions on this issue. We find the assignments of error based on the trial court's charge to the jury to be without merit.

Defendant received a trial free from prejudicial error.

No error.

Chief Judge MORRIS and Judge HILL concur.